Maechtlen v. Clapp.

---

### No. 26,764.

### E. H. Maechtlen, *Appellant*, v. (R. C. Clapp et al.) A. V. Roberts, *Appellee*.

### No. 26,765.

### Herman L. Tjaden, *Appellant*, v. (R. C. Clapp et al.) A. V. Roberts, *Appellee*.

### No. 26,766.

### Christ Pflugshaupt, *Appellant*, v. (R. C. Clapp et al.) A. V. Roberts, *Appellee*.

#### SYLLABUS BY THE COURT.

1. MALICIOUS PROSECUTION—*Liability of Attorney.* An attorney who knowingly permits a client to make him an instrument in prosecuting a groundless action against another to accomplish some evil purpose of the client, may be held accountable to the injured person in an action for malicious prosecution, but he is not responsible if he commences and prosecutes the action in good faith without knowledge of the fraudulent purpose of his client or that the claim sued upon is groundless.

2. SAME—*Liability of Attorney—Good Faith—Reliance on Statement of Client.* Unless the groundless character of the cause and the malicious motive of his client is brought to his attention, an attorney may advise and act on the assumption that the facts related by his client are honestly given and are substantially correct; and further, that it is not his duty to go elsewhere for information respecting the honesty of the claim or the good faith of his client.

3. SAME—*Liability of Attorney—Good Faith—Evidence.* It appearing that the evidence produced by plaintiff showed nothing inconsistent with the good faith of the attorney in bringing and prosecuting the action, nor to prove the elements necessary to make the attorney liable for malicious prosecution, it was the province and duty of the court to sustain a demurrer to plaintiff's evidence and give judgment in favor of the attorney.

Malicious Prosecution, 28 C. J. pp. 455 n. 29, 456 n. 29, 475 n. 84, 476 n. 91, 478 n. 16, 500 n. 83, 503 n. 20, 509 n. 64, 510 n. 77; 18 R. C. L. 63. Witnesses, 40 Cyc. pp. 2475 n. 30, 2508 n. 22.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed November 6, 1926. Affirmed.

*William Keith,* of Wichita, for the appellants.
*Benjamin F. Hegler,* of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: E. H. Maechtlen, Herman L. Tjaden and Christ Pflugshaupt, each brought a separate action against R. C. Clapp, Elizabeth Clapp and A. V. Roberts, alleging that the defendants had maliciously brought a groundless civil action against the plaintiffs which had pended in the courts for about three years, and then was abandoned and dismissed. As all of the cases arose out of the same transactions and were based on the single original action alleged to have been maliciously instituted they were tried together upon the same evidence. At the end of plaintiffs' evidence the court upon the separate demurrers of the defendants sustained that filed by Elizabeth Clapp and A. V. Roberts upon the ground that plaintiff had failed to establish a cause of action against either of them, but overruled the demurrer as to R. C. Clapp. The trial proceeded against the latter and a judgment against him in each of the cases was entered. Each of the plaintiffs has appealed from the order sustaining the demurrer of Roberts, who was the attorney of the parties who brought the original action, but no appeal was taken by plaintiffs from the ruling sustaining the demurrer filed by Elizabeth Clapp. As all of the appeals rest upon the same evidence and one record, all were briefed and submitted together.

There appears to have been a number of controversies and considerable litigation between the plaintiffs and some of the defendants. In 1919 the Cumberland Refinery Corporation brought an action against The Quaker 777 Oil Company, a company in which the plaintiffs were stockholders, to recover from the oil company assets and leases, and the cancellation of deeds for the transfer of the Cumberland Refinery Corporation property to the oil company. It was charged that the transfer of the property had been accomplished by false representations and fraud. The action was brought on behalf of the corporation by the law firm of which Roberts was a member and the trial of the case resulted in favor of this client, The Cumberland Refinery Corporation. On December 28, 1920, the plaintiffs herein filed an action against the Blue Ridge Refining

Company, the Cumberland Petroleum and Refining Company, and the Cumberland Refinery Corporation, R. C. Clapp, and other members of his family. The purpose of this action was to cancel a mortgage held by the Clapp family on the refinery of the Cumberland Refinery Corporation, and for an accounting. There were charges of fraud as against the Clapps, but the validity of the mortgage was upheld. In December, 1921, J. A. Feister brought another action, in which he named the parties to the present actions as well as a number of others as defendants, the purpose of which was to foreclose certain mechanic- and mortgage-lien claims upon the refinery. Afterwards the original action which is alleged to have been maliciously instituted was begun. It was brought in the name of the Cumberland Refinery Corporation as plaintiff against the plaintiffs·and others, and the petition was prepared and signed by the firm of which the defendant, Roberts, was a member. The corporation alleged that the plaintiffs in this action with others called a meeting of the directors of the corporation in Kansas City, where they removed R. C. Clapp from the presidency and elected in his place C. C. Wadley, and that thereafter a meeting of the stockholders of the corporation was held at which the property of the corporation was sold to the Quaker 777 Oil Company; that the plaintiffs here who were directors at that time represented that the Quaker Oil Company was a going concern, owning many valuable oil and gas leases amounting to 203,000 acres; that the Quaker Oil Company had a seven-eighths interest in those leases and that the same company had a large amount of cash on hand, to wit, $75,000; and further had a contract to furnish gas to Kansas City, Kan., and Kansas City, Mo., and had the wells with which to supply gas to those cities; that they induced the stockholders to transfer to the Quaker Oil Company all the oil and gas leases held by the refinery corporation, together with its refinery near Wichita, which had almost been completed; that they represented·that the Quaker company had cash on hand to complete the refinery and develop the leases, and would issue in exchange for the property of the refinery corporation stock in the Quaker company to the extent of $429,000 in that company, and further that the stock in the Quaker company was of the par value of $429,610. It was further alleged that, based on these representations and offers, the Cumberland Refinery Corporation was induced to transfer its leases, and afterwards learned

that the representations made as to the Quaker Oil Company were false and fraudulent, and through the transfer the Cumberland Refinery Corporation had lost practically all of its oil and gas leases and the use of its refinery. It was alleged that the Quaker Oil Company had no cash on hand of any consequence; that its stock was worthless, that it had no contract with Kansas City, Kan., or Kansas City, Mo., and had no wells furnishing gas sufficient to supply those cities, and that in fact its stock was worthless. It was charged in that action that the plaintiffs herein, by their fraud and negligence, had dissipated the assets of the plaintiff company, had jointly and severally wrecked the plaintiff company and made its stock of little value, and the corporation therefore asked to recover damages against them in the sum of $281,584.

In the present case the plaintiffs aver that the charges of fraud so made were groundless and malicious, and had greatly damaged them in reputation and credit as well as having caused them much expense in employing counsel to prepare and make their defenses. The only defendant affected by this appeal is A. V. Roberts, who dictated and filed the petition in behalf of the corporation and its officers, the Clapps, and later had at their instance moved for a dismissal of the cause. He was in no sense a party to that action, and had no connection with it except that his firm was employed to represent the parties who brought the suit. It appears to have fallen to the lot of Roberts to prepare the pleadings, and that the parties who brought the action conferred with him more than with the other members of his firm. The mere fact that he was not a party to the action but acted in the capacity of an attorney does not of itself render him immune from a charge of malicious prosecution if, actuated by malice, he conspired with his client to commence a groundless action, or if he knew that the client was actuated by malice and that there were no grounds for the action. An attorney who knowingly permits a client to make him an instrument in prosecuting a party against whom the client had no ground of complaint or cause of action, or was bringing the action through animosity or some malicious motive, is accountable to the party wronged as much as if the suit was prompted by his own malice. In an early case it was said:

"The rule by which attorneys may be held liable for malicious prosecutions is clearly laid down by Tindall, C. J., in *Stockley v. Harnidge*, 34 Eng. C. L R. 276. It was there held that if the attorneys who commenced the suit alleged

to be malicious knew that there was no cause of action, and knowing this, 'dishonestly and with some sinister view, for some purpose of their own, or for some other ill purpose which the law calls malicious, caused the plaintiff to be arrested and imprisoned,' they were liable." (*Burnap v. Marsh et al.*, 13 Ill. 535, 538.)

However, malice cannot be imputed to an attorney merely because his client may have been actuated by malice in procuring the bringing of a groundless suit. If he prepares pleadings and conducts the litigation in good faith without any knowledge of the fraudulent purpose of his client and that the claim was in fact groundless, an action for malicious prosecution cannot be maintained against him. Of course he must act in good faith in making inquiry as to the facts upon which an action is advised, but he is not required to view with distrust the representations of his client and start a private inquiry as to the truth of his statement or to ascertain that he is not acting with some evil motive. Unless the malice and groundless character of the cause are obvious from the facts related by his client or are otherwise brought to his attention, he may advise and act on the assumption that his client is honest and that the facts related by him are substantially correct. In *Peck v. Chouteau*, 91 Mo. 138, 151, an action for malicious prosecution, it was said:

"The attorney has a right to advise and act upon the facts which he gets from his client, and it is not his duty to go elsewhere for information."

Further along in the opinion it is said:

"We state again that the attorney has a right to advise and count upon such information as the client reveals to him. Nothing short of complete knowledge on the part of the attorney, that the action is groundless, and that the client is acting solely through illegal or malicious motives, should make him liable in these actions. As was said by Mr. Justice Bradley in *Campbell v. Brown*, 2 Woods, 350: 'If attorneys cannot act and advise freely and without constant fear of being harassed by suits and actions at law, parties could not obtain their legal rights.'" (p. 152.)

In *Bicknell v. Dorion*, 33 Mass. (Pick.) 478, where an action was brought against an attorney as well as his client to recover for the malicious prosecution of the original suit alleged to have been brought without probable cause, in the opinion announced by Chief Justice Shaw it was held that:

"An action cannot be maintained against an attorney at law for bringing a civil action unless he commenced it without the authority of the party in whose name it was sued, or unless there was a conspiracy between them to bring a groundless suit, the attorney knowing it to be groundless and commenced without any intention or expectation of maintaining it." (Syl.)

In *Miller v. Metropolitan Life Ins. Co.*, 28 Ky. L. 223, where it appeared that the attorney's only connection with the original action was as counsel, and that from the facts presented to him by his clients' witnesses he believed there were reasonable grounds for the prosecution, and therefore advised an arrest, the court held that:

"An attorney, who on the facts presented by the witnesses of his client believed there was probable cause for a third person's arrest and prosecution for crime, and who in good faith advised the institution of the prosecution, is not liable for malicious prosecution."

Again it has been said that a lawyer "is not liable for innocently putting the law in motion in *bona fide* reliance on his client's information." (26 Cyc. 19. See, also, *Liquid Carbonic Acid Mfg. Co. v. Convert*, 82 Ill. App. 39; *Seary v. Saxton et al.*, 28 Nov. Sc. 278.) The question then arises, was there proof that Roberts was actuated by malice or had knowledge that his client had no cause of action against the plaintiffs herein and was actuated by some malicious motive in procuring the commencement of the action. It devolved on them to prove the essential elements of an action for malicious prosecution, and if they failed to introduce evidence tending to establish these elements there was nothing to submit to the jury. To make a case it was necessary for them to show that the action was maliciously brought without probable cause. Both elements must concur, and whether want of probable cause was shown is primarily a question of law for the court. (*A. T. & S. F. Rld. Co. v. Watson*, 37 Kan. 773, 15 Pac. 877.) Assuming that Roberts' client acted with malice and without probable cause, it was still necessary as against Roberts to show that he knew of his client's evil intent and that the claim made was groundless. A reading of the record fails to disclose any evidence of personal malice on the part of Roberts or knowledge of evil intention on the part of his clients. If the facts related to Roberts prior to the commencement of the original suit were true, a good cause of action existed against the plaintiffs. The testimony in the record shows that Roberts believed the statements made to him by his clients and that he faithfully set these forth in the petition, and did so in the faith that they could be established by evidence. Nothing was shown that was inconsistent with good faith and an honest reliance on the facts brought to him by his clients. The evidence offered by plaintiff on this feature of the case not only shows no bad faith of Roberts nor a knowledge by him of the ground-

Macchtlen v. Clapp.

less character of the proposed action, but on the contrary it affirmatively shows that there was no malice on his part and no knowledge of an evil motive of his clients, but that he honestly acted in reliance on the statement made by his clients. On the question of malice and lack of probable cause, the plaintiffs called Roberts as their witness, and he testified that he accepted as true the facts related to him and faithfully recited them in the pleading which he filed. According to the evidence everything done by Roberts was consistent with good faith and honesty of purpose. On this branch of the case it can be said that there was no dispute in the evidence and no evidence in fact to prove the essential elements to a recovery against Roberts. There being no dispute as to the facts in the case, no room for an inference that Roberts acted in bad faith in relying on the representations made to him by his clients with respect to probable cause, the court was justified, and in fact was duty bound, to sustain the demurrer to plaintiff's evidence. It is argued that too much range was given to the cross-examination of Roberts when called as a witness for plaintiff. The objection is without merit. The scope of the inquiry in the direct examination opened up the whole subject of the knowledge of Roberts as to the probable cause and the motives of his clients in bringing the action, and of his purpose in preparing the petition and the steps taken in the conduct of the case, so that an extensive inquiry on cross-examination was justified.

Finding no error in the record the judgment is affirmed.