No. 47,316

LEON STOHR, *Appellant,* v. JAMES C. DONAHUE and DONAHUE MANUFACTURING CO., INC., *Appellees.*

(527 P. 2d 983)

Opinion filed November 2, 1974.

*Keen K. Brantley,* of Scott City, argued the cause, and *James W. Wallace* and *John Shirley,* also of Scott City, were with him on the brief for the appellant.

*Lelyn J. Braun* and *J. Stephen Nyswonger,* of Garden City, and *David Wheeler, Edwin G. Westerhaus,* and *D. W. Wheeler,* of Marion, were on the brief for the appellees.

The opinion of the court was delivered by

FOTH, C.: This is a malicious prosecution action arising out of a criminal complaint against the plaintiff, Leon Stohr, signed by the individual defendant, James C. Donahue, acting on behalf of the corporate defendant Donahue Manufacturing Co., Inc. The jury returned a plaintiff's verdict for $2500 actual and $5500 punitive

damages, and answered twelve special questions. On post-trial motion the trial court set aside some of the jury's answers; in particular it held the jury's finding of malice on the part of the defendants was "totally unsupported by the evidence and should be set aside." The court further found that plaintiff had "failed to prove a cause for action for the plaintiff against the defendants." Accordingly it set aside the verdict and entered judgment for the defendants. Plaintiff has appealed.

Of plaintiff's seven claims of error, the first five concern the jury's answers to those of the special questions which related only to the defendants' claimed reliance on the advice of private counsel and of the public prosecutor. These were all matters of defense. The sixth is an assertion that there was evidence from which the jury could, indeed, have inferred malice. The seventh attacks the finding that plaintiff failed to prove his cause of action. If this last ruling was correct—and we hold it was—consideration of the other points becomes unnecessary. Our holding is based on our conclusion that there was probable cause to institute the original criminal prosecution.

That prosecution was instituted in the county court of Scott county on August 11, 1970. The complaint, framed under the new criminal code (then K. S. A. 1969 Supp.), was in four counts: (1) committing a deceptive commercial practice (§ 21-4403); (2) theft by obtaining or exerting unauthorized control over property (§ 21-3701 [*a*]); (3) theft by obtaining by deception control over property (§ 21-3701 [*b*]); and (4) unlawful deprivation of property (§ 21-3705). A warrant was issued, resulting in plaintiff's arrest and confinement in the Scott county jail for two days before he made bond. A preliminary hearing was held during which the state dismissed count 4 of the complaint. At the conclusion of the hearing the county judge found that no crime had been committed and ordered that the accused, plaintiff here, be discharged. (Such a discharge is, at best, only *prima facie* evidence of want of probable cause at the time of the hearing. It does not determine whether or not probable cause existed at the time the complaint was filed. See, *Thompson v. General Finance Co., Inc.,* 205 Kan. 76, Syl. ¶ 13, 468 P. 2d 269; *Messinger v. Fulton,* 173 Kan. 851, 252 P. 2d 904, and cases cited therein.)

All four charges in the complaint arose out of a single series of transactions which culminated in plaintiff's receiving $2708.40 from

the sale of two trailers owned by Donahue Manufacturing Co., Inc. In examining these transactions, particularly as they relate to probable cause, it is essential to bear in mind certain well established principles of our law of malicious prosecution. The authorities in the area are most recently reviewed in *Thompson v. General Finance Co., Inc.*, supra, where we held:

"To maintain an action for malicious prosecution the plaintiff must prove that the defendants instituted the proceeding of which complaint is made, that the defendants in so doing acted without probable cause and with malice, that the proceeding terminated in favor of the pla[i]ntiff, and that the plaintiff sustained damages. The plaintiff must prove both malice *and lack of probable cause, and unless both are proved, the plaintiff's claim must fail.*" (Syl. ¶ 5. Emphasis added.)

"In actions for malicious prosecution, the inquiry as to the want or existence of probable cause is limited to the facts and circumstances *which were apparent at the time the prosecution was commenced.*" (Syl. ¶ 6. Emphasis added.)

In *Thompson* we also recognized that where the facts are in dispute the issue of probable cause is for the jury, but where there is no factual dispute it is a question of law for the court (id., syl. ¶ 15). See, also, *Walker v. Smay,* 108 Kan. 496, 196 Pac. 231; *A. T. & S. F. Rld. Co. v. Watson,* 37 Kan. 773, 15 Pac. 877. Accordingly, in reaching our conclusion we have considered only those facts as to which there was no dispute. Further, since probable cause is to be determined by conditions which were "apparent at the time the prosecution was commenced" (*Thompson,* supra, Syl. ¶ 6), we look only at how things seemed to the defendants on August 11, 1970, and ignore matters such as plaintiff's secret motives or other facts which came to light later.

The facts, then, which are relevant by our criteria are these: James C. Donahue was president of Donahue Manufacturing Co., Inc., of Durham, Kansas, which manufactured trailers designed to carry harvest combines. Plaintiff, operating out of his home in Hutchinson, acted as a factory representative and also sold merchandise of his own. He began working for Donahue in 1963, selling Donahue trailers to farm implement dealers. When he sold Donahue's merchandise the purchasing dealer would pay Donahue directly; plaintiff received his commissions from Donahue.

On May 2, 1970, Donahue wrote plaintiff terminating his employment. The reason given was that many large accounts resulting from plaintiff's sales were hard to collect, despite Donahue's re-

peated admonitions to plaintiff to use more discretion in extending credit. Plaintiff was also advised payment had been stopped on his latest commission check because it represented advance payments. Further commissions, plaintiff was told, would be paid only when, as and if the accounts from his sales were collected.

At this time Donahue had in the hands of dealers, unpaid for, the two trailers which form the center of this controversy. Each had been placed by plaintiff under a newly designed contract calling for the dealer to pay 10% down ($135.42), and the balance either when sold or in any event by June 10, 1970. If he failed to pay, Donahue could pick up the trailer and transfer it to another dealer, in which case the original dealer forfeited his 10%. One of these trailers was at the Triple-S equipment company of Turon, the other at the Hi-Plains equipment company of Dodge City.

At the same time Donahue sent plaintiff his termination letter it sent a semi-annual audit letter to each of its dealers asking for confirmation of the balance due Donahue. The audit letter also reminded the dealers that payments on the accounts should be made only by checks payable to Donahue—no other payment would be accepted. The letters to Triple-S and Hi-Plains each indicated a balance due of $1218.78. Each dealer responded by acknowledging the correctness of the account, Triple-S noting that "This unit is on consignment."

In late June or early July (the exact date is in dispute) plaintiff met with Mr. Donahue and the Donahue office manager. After some discussion Donahue paid him $594.14 for commissions earned. The check and settlement statement were dated July 7, 1970.

On July 25 Donahue sent out routine monthly billing statements to its dealers, including Triple-S and Hi-Plains. In reply came a letter dated July 29 from Triple-S saying that a Scott City dealer had picked up the trailer they had; that plaintiff had called and arranged for the transfer and had assured Triple-S it would not only receive a credit for the $1218.78 balance but a refund of its $135.42 down payment.

The Triple-S letter prompted immediate action by Mr. Donahue. On July 30 he called the Triple-S manager and found that plaintiff had arranged for the transfer to Scott City of not one but probably two Donahue trailers. When Hi-Plains couldn't be reached, Donahue called Jake Henderson, the Scott City dealer. Yes, said Henderson, he had picked up the two trailers through an agreement with

plaintiff. He had no idea plaintiff wasn't working for Donahue any more. Furthermore, he had been billed by plaintiff for the trailers and had paid him $2708.40. His check to plaintiff was dated July 16, 1970, and had cleared his bank on July 21. (The transfer arrangements had been made July 3, plaintiff's bill to Henderson was dated July 3, and the trailers were picked up on July 4, but it is not clear from the record when Donahue became aware of these exact dates.)

The same day Mr. Donahue first consulted counsel in Marion. As a result of this conference Donahue wrote plaintiff a letter, dated July 30, 1970, pointing out that plaintiff had no claim to either the trailers or their proceeds and making demand for payment by August 3rd. The letter was sent by certified mail, return receipt requested.

No response or return receipt was forthcoming. About August 7, Donahue's advertising agent happened to be going to Hutchinson so Mr. Donahue asked him to check on the status of the certified letter. He reported back the same day that the post office had made two unsuccessful attempts to deliver it, considered it undeliverable, and would make no further efforts. Donahue promptly sent a copy of the letter to plaintiff by ordinary, first class mail.

The lack of response prompted a second visit to Donahue's attorney, on August 7. At this time a call was placed to the acting county attorney of Scott county to determine if some sort of criminal charge should be filed. After a few days and at least one more telephone call between the attorneys the complaint was drawn, forwarded to Donahue's counsel, and signed in counsel's office by Mr. Donahue on about August 10.

The question is, did Mr. Donahue at that time have probable cause to believe that plaintiff had committed a crime?

We think it inescapable that he did. Plaintiff, a discharged employee, had sold and collected the sales price for valuable property in which Donahue had an interest with no semblance of authority. Donahue was the "owner" of the trailers (K. S. A. 1969 Supp. 21-3110 [13]); plaintiff's conduct amounted to "obtaining or exerting control" over them (id., 21-3110 [12]); his conduct was certainly unauthorized. Whether he exerted such control personally or through another is immaterial. *State v. Carr*, 151 Kan. 36, 98 P. 2d 393; *State v. Wolkow*, 110 Kan. 722, 205 Pac. 639, 42 A. L. R. 265. Hence all the elements of "theft" under K. S. A. 1969 Supp. 21-3701 were present—in fact as well as appearance—except the "intent to

deprive the owner permanently of the possession, use or benefit of his property."

As to intent, Donahue knew that as of August 10, plaintiff had had possession of the $2708.40 proceeds for 25 days without making any effort to account to the owner. Furthermore, he couldn't be found at his usual address by the post office. Eleven days had elapsed since the certified letter was mailed, three since the follow-up, and still no phone call or other word. We think any reasonable person in Mr. Donahue's shoes might have concluded that plaintiff didn't ever intend to account for the money, *i. e.*, that he *had* an "intent to deprive the owner permanently of the . . . benefit of his property."

But even if this were not so—if Mr. Donahue should have realized that plaintiff would at some time pay over the proceeds—plaintiff had undoubtedly obtained and exerted unauthorized control over property, *i. e.*, the sales price, and the intent to deprive the owner of the temporary use thereof must be inferred from his failure to pay over immediately. Thus we have all the elements of "unlawful deprivation of property" under § 21-3705, which was one of the offenses originally charged, and was a lesser included offense of the two theft counts.

The net result is that no matter how charitably Mr. Donahue might have looked at plaintiff's conduct, he had probable cause to believe plaintiff had committed one of the crimes charged in the complaint. The exact formulation of the charges to be filed under the new code (it had been in effect only since July 1, 1970) was for lawyers, not the lay complainant. The complaint was doubtless duplicitous, in that plaintiff could probably have been convicted of only one of the four counts; that was a matter to be dealt with by the trial court had the matter ever come to trial. Hence regardless of motive there was legal justification for instituting the prosecution.

Since lack of probable cause was indispensable to plaintiff's case, the trial court was correct in concluding that plaintiff had failed to prove his cause of action, and correctly rendered judgment for the defendants.

The judgment is affirmed.

APPROVED BY THE COURT.