No. 50,187

R. A. Nelson, M.D., *Plaintiff-Appellant,* v. Vern Miller; Fred W. Phelps; Fred W. Phelps, Chartered; and Avram G. Adler, Marvin I. Barish, Robert C. Daniels, Marvin J. Levin, Arnold Levin, and Howard J. Creskoff, d/b/a Adler, Barish, Daniels, Levin and Creskoff, a partnership; *Defendants-Appellees.*

(607 P.2d 438)

Opinion filed March 1, 1980.

*Jerry K. Levy,* of Levy, Ambrosio, and McDowell, of Topeka, argued the cause and was on the brief for the appellant.

*Fred W. Phelps, Jr.,* of Fred W. Phelps, Chartered, of Topeka, argued the cause and was on the brief for the appellee Fred W. Phelps.

*J. H. Eschmann,* of Ascough, Bausch, and Eschmann, of Topeka, argued the cause, and *John A. Bausch,* of the same firm, was with him on the brief for the appellee Vern Miller.

*Charles L. Davis, Jr.,* of Davis, Unrein, and Hummer, of Topeka, argued the cause and was on the brief for the appellees Adler, Barish, Daniels, Levin, and Creskoff.

The opinion of the court was delivered by

Prager, J.: This is an action brought by a Wichita physician against several attorneys seeking to recover damages for the wrongful use of civil proceedings, commonly described as an

action for malicious prosecution of a civil action. This action was the result of a prior civil malpractice action filed on April 1, 1976, in the district court of Sedgwick County. That action was case No. D-36 241, entitled *Van Nover, et al. v. Wesley Medical Center, et al.* R. A. Nelson, M.D. was one of several doctors named as defendants in that suit. The petition in that case was filed by the defendants Vern Miller, Fred Phelps, Chartered, and Adler, Barish, Daniels, Levin, and Creskoff, a law firm of Philadelphia, Pennsylvania, as attorneys for the plaintiffs.

The medical malpractice petition alleged in substance that the Van Novers had been damaged by negligent treatment afforded Debbie Van Nover by the defendants, including R. A. Nelson. Specifically, it was alleged that Debbie Van Nover, while pregnant with her son, Christopher, was surgically treated by the physicians in the performance of a Dilation and Curettage (D & C) upon her uterus without a prior examination for pregnancy. It was alleged that as a result the undetected fetus (Christopher) was injured. It was also contended that the decision to deliver Christopher Van Nover by Caesarian section was premature, and, therefore, constituted negligence on the part of the treating physicians. In that action, the Van Novers claimed damages against Wesley Medical Center and the five physicians in the amount of $5,000,000 actual damages and $10,000,000 punitive damages. On October 10, 1977, the malpractice action was dismissed without prejudice as to defendant Dr. Nelson. In the order of dismissal, counsel stipulated that if, after further discovery and for good cause the plaintiffs would seek to rejoin Dr. R. A. Nelson, M.D. as a defendant in the case, the bar of the statute of limitations (K.S.A. 60-518) would not be raised against such rejoinder if made more than six months from the entry of the order of dismissal. Thereafter, extensive discovery was conducted by counsel for the remaining parties in the case. On April 18, 1978, summary judgment was granted in favor of all of the remaining defendants on their motion. The trial judge found that the actions of the defendants, upon which the Van Novers had based their claims, dealt only with questions of medical judgment, thereby precluding liability for negligence. That summary judgment was later appealed to the Kansas Court of Appeals, and was affirmed in an unpublished opinion filed June 29, 1979. A petition for review was thereafter denied.

Following the entry of summary judgment in the medical malpractice action, Dr. Nelson filed his action in the district court of Shawnee County against these defendants who were the attorneys of record for plaintiffs in the prior action. In his amended petition filed May 9, 1978, Dr. Nelson set forth two separate claims. The first claim sought recovery of damages from the attorneys on the theory of malicious prosecution of a civil action. The second claim sought recovery of damages on a theory of simple negligence. Counsel for Dr. Nelson commenced the discovery process in this case by filing requests for admissions, interrogatories, and requests for the production of documents. All of this discovery was opposed by defendants and was never answered by defendants. Thereafter, all of the defendant attorneys filed motions to dismiss pursuant to K.S.A. 60-212(b)(6). On June 5, 1978, the district judge sustained the motions to dismiss Dr. Nelson's claims. This appeal was taken by Dr. Nelson, seeking to overturn the dismissal of his claims against the various defendant attorneys.

In dismissing the plaintiff's claim, the district court had before it a rather scanty record consisting solely of four documents. First was the plaintiff's amended petition filed in this case. In the first claim of the amended petition, Dr. Nelson alleged in substance that he is a practicing physician living in Wichita and that each of the defendants are attorneys at law. He further alleged that on April 1, 1976, the defendants, as attorneys, caused a petition to be filed in the district court of Sedgwick County on behalf of the plaintiffs, Van Novers, and that R. A. Nelson, M.D., was one of the defendants in that cause. Because an issue has been raised as to the sufficiency of the allegations of the petition, certain paragraphs of the plaintiff's first claim will be set forth verbatim:

"IV. In the aforementioned petition, the plaintiff was sued for five million dollars actual damages and ten million dollars punitive damages. It was further alleged that the plaintiff was guilty of negligence, gross and wanton negligence and recklessness in his medical treatment of Christopher Allen Van Nover. Said allegation was and is false.

"V. It was further alleged in the aforementioned petition that the plaintiff caused severe, permanent and progressive worsening brain damage to Christopher Allen Van Nover. Said allegation was and is false.

"VI. It was further alleged in the aforementioned petition that plaintiff caused Christopher Allen Van Nover a lifetime of shame embarrassment and indignity. Said allegation was and is false.

"VII. At the time the aforementioned petition was filed it was known or

should have been known by defendants that all of the allegations made against the plaintiff were false.

"VIII.  The defendants instituted the medical malpractice proceeding against this plaintiff without probable cause, and with malice.

"IX.  The defendants continued to prosecute the action against this plaintiff without probable cause, and with malice.

"X.  The action brought and prosecuted by the defendants, jointly and separately, against this plaintiff, terminated in favor of the plaintiff on the 10th day of October, 1977.

"XI.  As a direct result of the malice of the defendants, jointly and separately, the plaintiff has been damaged.

"Wherefore plaintiff prays for judgment against the defendants in an amount in excess of ten thousand dollars ($10,000)."

In his second claim the plaintiff, Nelson, incorporated by reference all of the allegations of his first claim and then proceeded to allege as follows:

"II.  Before filing the aforementioned petition against this plaintiff, defendants negligently failed to investigate the claim. Said negligence was a departure from standard approved legal practice.

"III.  Defendants continued to prosecute a claim against this plaintiff with full knowledge that the claim against this plaintiff was unjust and totally without merit. Such action was negligent and a departure from standard approved legal practice.

"IV.  Filing and continued prosecution of an unjust and meritless claim by the defendants against this plaintiff was done with the knowledge that it would cause and was causing damages to the plaintiff.

"V.  As a direct result of the negligence and departure from standard approved legal practice of the defendants, the plaintiff has been damaged.

"Wherefore plaintiff prays for judgment against the defendants in an amount in excess of ten thousand dollars ($10,000)."

At the time the district court dismissed Dr. Nelson's claims, it also had before it the petition filed in the Sedgwick County malpractice case and the order dismissing the case without prejudice as against Dr. Nelson, dated October 10, 1977. The only other evidentiary matter before the district court at the time was the memorandum decision in the Sedgwick County malpractice action granting summary judgment in favor of the remaining defendants. In that memorandum decision, Judge Paul L. Thomas of the Sedgwick County District Court noted that the only negligent act indicated by discovery on the part of any defendant was the performance of a premature Caesarian section and that nothing in the testimony of the witnesses connected the defendant Nelson to any of the plaintiffs' claims. The attorneys for the plaintiffs in that case agreed with those conclusions. In

addition, in his memorandum decision, Judge Thomas held, as a matter of law, that there was no evidence to show that any of the medical defendants had departed from established medical standards in performing the Caesarian section.

At the time Judge Michael A. Barbara sustained the motion to dismiss in this case, he noted that the defendants' motions were essentially motions for summary judgment. In referring to the malicious prosecution claim, he observed that, before Dr. Nelson could proceed, he was required to properly allege and show that the defendants, as attorneys for the Van Novers, knew that the malpractice action was a groundless claim, knew that there was no basis for the claim, and filed it solely to harass Dr. Nelson. The court held, as a matter of law, that no malice or lack of probable cause existed in the medical malpractice action and, therefore, the malicious prosecution claim should be dismissed. It was further held that Dr. Nelson could not maintain his second claim against the defendant attorneys on a theory of simple negligence, since they had not been employed by Dr. Nelson as *his* attorneys. In addition, Judge Barbara indicated that, as a matter of law, the dismissal of the previous malpractice action without prejudice was not a termination in favor of Dr. Nelson. From the order of dismissal, Dr. Nelson has appealed to this court.

There are two basic issues raised on this appeal. The first issue is whether, on the basis of the record before it, the district court was justified in dismissing the plaintiff's first claim based upon the theory of malicious prosecution of a civil action. The second issue is whether the district court was justified in dismissing the plaintiff's second claim based upon a theory of simple negligence. In order to determine the appeal, we must consider and determine each issue separately.

At the outset it would be helpful to review the basic principles of law which are to be applied in an action for malicious prosecution of a civil action. This state has long recognized that a cause of action may exist based upon the malicious prosecution of a prior civil action. Some of the basic principles are as follows:

(1) The elements necessary to be alleged and proved in order to maintain an action for malicious prosecution of a civil action are the same as those required to sustain an action for a malicious prosecution of a criminal action. *Braun v. Pepper,* 224 Kan. 56, 59, 578 P.2d 695 (1978); *Investment Co. v. Burdick,* 67 Kan. 329, 72 Pac. 781 (1903).

(2) To maintain an action for malicious prosecution of a civil action the plaintiff must prove the following elements:

(a) That the defendant initiated, continued, or procured civil procedures against the plaintiff.

(b) That the defendant in so doing acted without probable cause.

(c) That the defendant acted with malice, that is he acted primarily for a purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based.

(d) That the proceeding terminated in favor of the plaintiff.

(e) That the plaintiff sustained damages. See Restatement (Second) of Torts § 674 (1976); *Thompson v. General Finance Co., Inc.,* 205 Kan. 76, 468 P.2d 269 (1970); *Investment Co. v. Burdick,* 67 Kan. at 337; *Malone v. Murphy,* 2 Kan. *250 (1864).

(3) In addition to the initiation of the prior action, it is sufficient if it is shown that the defendant continued or procured the filing of the action. To be liable, it is not necessary that the defendant actually be a party to the prior civil action. The attorney who represented the plaintiff in the prior action may be held liable. *Maechtlen v. Clapp,* 121 Kan. 777, 250 Pac. 303 (1926). Likewise, a conspirator who procured the filing of the prior action may be held liable. *Vaughan v. Hornaman,* 195 Kan. 291, 403 P.2d 948 (1965). A person may also be held liable for the wrongful continuance of the original proceeding. *Barnes v. Danner,* 169 Kan. 32, 216 P.2d 804 (1950).

(4) In order for a person to be liable for wrongful use of civil proceedings it must be shown that the person was affirmatively active in the initiation or continuance of the prior action. *Barnes v. Danner,* 169 Kan. at 35; *A.T. & S.F. Rld. Co. v. Watson,* 37 Kan. 773, 15 Pac. 877 (1887); Restatement (Second) of Torts § 674.

(5) Where a party makes an unlawful demand against another and maliciously and oppressively uses the machinery of the courts and the process of the law as well as other measures in an endeavor to enforce the payment of such demand, the injured party is entitled to recover the loss and damage resulting from such wrongdoing. It is not necessary to prove the existence of a conspiracy. *Stalker v.Drake,* 91 Kan. 142, 136 Pac. 912 (1913).

(6) The premature commencement of a civil action may be

made the foundation of an action for malicious prosecution. *Bratton v. Exchange State Bank,* 129 Kan. 82, Syl. ¶ 5, 281 Pac. 857 (1929).

(7) A cause of action for malicious prosecution of a civil action may be alleged in general language in a petition, so long as the essential elements are set forth. See for example, *Vaughan v. Hornaman,* 195 Kan. at 297. In this regard, it should be noted that K.S.A. 60-208 requires that a pleading contain only (1) a short and plain statement of the claim showing that the pleader is entitled to relief and, (2) a demand for judgment for the relief to which the pleader deems himself or herself entitled. Under Kansas notice pleading, there is no requirement that a petition state facts sufficient to constitute a cause of action. *Rinsley v. Frydman,* 221 Kan. 297, 301, 559 P.2d 334 (1977). It should also be noted that K.S.A. 60-209, covering the pleadings of special matters, does not contain any special pleading requirements applicable to actions for malicious prosecution.

(8) In order to maintain an action for malicious prosecution, the plaintiff must prove that the defendant initiated the proceedings of which complaint is made without probable cause. *Carnegie v. Gage Furniture, Inc.,* 217 Kan. 564, 538 P.2d 659 (1975); *Malone v. Murphy,* 2 Kan. at *262. Probable cause for instituting a proceeding exists when there is a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious or prudent man in the belief that the party committed the act of which he is complaining. *Barnes v. Danner,* 169 Kan. at 36. See also for approval of the reasonable man rule, *Carnegie v. Gage Furniture, Inc.,* 217 Kan. at 568. In cases of malicious prosecution, the inquiry as to want of probable cause is limited to the facts and circumstances as they appeared to defendant at the time the prosecution was commenced. PIK Civil 2d 14.31 (1978); *Stohr v. Donahue,* 215 Kan. 528, 527 P.2d 983 (1974); *Thompson v. General Finance Co., Inc.,* 205 Kan. 76, Syl. ¶ 6; *Messinger v. Fulton,* 173 Kan. 851, 857, 252 P.2d 904 (1953); *A.T. & S.F. Rld. Co. v. Watson,* 37 Kan. 773, Syl. ¶ 3. If the facts are undisputed, the question of probable cause is one for the court to decide as a matter of law. *Parli v. Reed,* 30 Kan. 534, 2 Pac. 635 (1883). If the facts tending to establish the existence or want of existence of probable cause are in dispute, it becomes the duty of the trial court to submit the question to the

jury. *Thompson v. General Finance Co., Inc.,* 205 Kan. at 78, Syl. ¶ 15.

(9) Malice is an essential element of an action for malicious prosecution but it is not restricted to the personal hatred, spite, or revenge of the one who institutes the prosecution. It is enough if the prior action was instituted for any improper or wrongful motive. When a proceeding is intentionally instituted with any other motive than to bring a party to justice, it is in law a malicious prosecution. *Foltz v. Buck,* 89 Kan. 381, 385, 131 Pac. 587 (1913). A criminal prosecution is properly brought only to punish crime and to bring criminals to justice. To subject a person to liability for wrongful use of civil proceedings, the proceedings must have been initiated or continued primarily for a purpose other than that of securing the proper adjudication of the claim on which they are based. Any other purpose constitutes malice, as that term is used in civil actions for malicious prosecution. Restatement (Second) of Torts § 676, comment *c,* gives the following illustrations of situations in which civil proceedings may be said to have been initiated primarily for an improper purpose:

"c.   There are numerous situations in which the civil proceedings are initiated primarily for an improper purpose. Some of them have been established as patterns and may be described in some detail. The following are illustrative:

"The first situation arises when the person bringing the civil proceedings is aware that his claim is not meritorious. Just as instituting a criminal proceeding when one does not believe the accused to be guilty is not acting for the proper purpose of bringing an offender to justice (see § 668, Comment *b*), so instituting a civil proceeding when one does not believe his claim to be meritorious is not acting for the purpose of securing the proper adjudication of his claim. One may believe that his claim is meritorious even though he knows that the decisions in the state do not sustain it if he believes that the law is potentially subject to modification and that this case may be a suitable vehicle for producing further development or change. He may believe that his claim is meritorious if he believes that the actual facts warrant the claim but recognizes that his chances of proving the facts are meager. He cannot believe that the claim is meritorious, however, if he knows that it is a false one based upon manufactured or perjured testimony, or if he realizes that the adjudication will not be in his favor unless the court or jury is misled in some way. He is then abusing the general purpose of bringing civil proceedings and is not seeking a proper adjudication of the claim on which the civil proceeding is based.

"The second situation arises when the proceedings are begun primarily because of hostility or ill will. This is 'malice' in the literal sense of the term, which is frequently expanded beyond that sense to cover any improper purpose. Thus, if the purpose of the civil proceeding is solely to harass the defendant, it is

frequently said that this amounts to malice. But it is not necessary to prove that the harassment was itself motivated by ill will.

"A third situation arises when the proceedings are initiated solely for the purpose of depriving the person against whom they are brought of a beneficial use of his property. An instance of this type occurs when the proceedings attacking the title to the land owned by the defendant are for the purpose not of adjudicating the title but of preventing the owner from selling his land.   .   .   .

"A fourth situation arises when the proceedings are initiated for the purpose of forcing a settlement that has no relation to the merits of the claim. This occurs, for. example when a plaintiff, knowing that there is no real chance of successful prosecution of a claim, brings a 'nuisance suit' upon it for the purpose of forcing the defendant to pay a sum of money in order to avoid the financial and other burdens that a defense against it would put upon him. A further instance occurs when the proceedings are based upon alleged facts so discreditable as to induce the defendant to pay a sum of money to avoid the notoriety of a public trial.

"A fifth type of situation arises when a defendant files a counterclaim, not for the purpose of obtaining proper adjudication of the merits of that claim, but solely for the purpose of delaying expeditious treatment of the original cause of action.

"In all of these situations, if the proceedings are also found to have been initiated without probable cause, the person bringing them may be subject to liability for use of wrongful civil proceedings." pp. 462-463.

The existence of malice or wrongful purpose is ordinarily a question of fact for the jury. *Walker v. Smay,* 108 Kan. 496, 196 Pac. 231 (1921). The jury may infer malice (wrongful purpose) from the absence of probable cause but they are not bound to so infer it. *Thompson v. General Finance Co., Inc.,* 205 Kan. at 78; *Bratton v. Exchange State Bank,* 129 Kan. 82, Syl. ¶ 3; *Parli v. Reed,* 30 Kan. at 537; *Malone v. Murphy,* 2 Kan. at *256.

(10)   The advice of counsel, as to the institution of a *criminal proceeding,* sought and acted upon in good faith, will absolve one from damages for malicious prosecution; but only where all the facts known to the informant, and *all which can be learned by a diligent effort to acquire information,* have been laid before such counsel. *Messinger v. Fulton,* 173 Kan. at 855; *Haines v. Railway Co.,* 108 Kan. 360, 195 Pac. 592 (1921); *Drake v. Vickery,* 81 Kan. 519, 520, 106 Pac. 290 (1910); *Railroad Co. v. Brown,* 57 Kan. 785, 48 Pac. 31 (1897). In *McGarr v. Schnoor Cigar Co.,* 125 Kan. 760, 766, 266 Pac. 73 (1928), in an action to recover for malicious prosecution of a *civil* action, this court stated that in order for advice of counsel to be a defense, the advice must be acted upon in good faith, and only where all the facts known to the informant and *all which can be learned by a diligent effort to acquire information* have been laid before such counsel. To the same

effect is *Carnegie v. Gage Furniture, Inc.*, 217 Kan. at 569, where it is stated that when a defendant seeks to rely on the advice of counsel to establish probable cause for instituting a civil action it must appear that he fully disclosed to counsel the facts surrounding the charge *as well as those which can be learned by reasonable effort.*

(11)   As noted above, one of the elements of an action for wrongful use of civil proceedings is that the prior civil proceeding must have terminated in favor of the person against whom the prior civil action was brought. The action cannot be brought if the original action is still pending and undetermined. *Harper v. Cox,* 113 Kan. 357, 214 Pac. 775 (1923). Civil proceedings may be terminated in favor of the person against whom they are brought by (1) the favorable adjudication of the claim by a competent tribunal, or (2) the withdrawal of the proceedings by the person bringing them, or (3) the dismissal of the proceedings because of his failure to prosecute them. A favorable adjudication may be by a judgment rendered by a court after trial, or upon demurrer or its equivalent. Whether a withdrawal or an abandonment constitutes a final termination of the case in favor of the person against whom the proceedings are brought and whether the withdrawal is evidence of a lack of probable cause for their initiation, depends upon the circumstances under which the proceedings are withdrawn. Restatement § 674, comment *j.*

In *Bratton v. Exchange State Bank,* 129 Kan. at 86, it was held that the abandonment of a cause of action by the filing of an amended petition was a sufficient termination to authorize a malicious prosecution action. It is clear that the termination of the prior action favorable to the plaintiff required as an element of a malicious prosecution action may result without a trial of the prior action on the merits. *Green v. Warnock,* 144 Kan. 170, 58 P.2d 1059 (1936). The issue of "termination favorable to plaintiff" was thoroughly discussed in an early Kansas case, *Marbourg v. Smith,* 11 Kan. *554 (1873). In *Marbourg,* an action for slander was dismissed as to defendant Smith, but without his agreement or authorization. In Smith's action against Marbourg for malicious prosecution, dismissal of the prior action for slander was held to be no bar to Smith's action. The requirement of a termination favorable to plaintiff was explained as follows:

"But it is not necessary that there should have been a trial upon the merits of the

alleged malicious prosecution. If the action has been dismissed, as in this case, that is sufficient, if the action has not been commenced again. [Citations omitted.] The reasons why an action should be terminated in favor of a defendant before the defendant can commence an action for malicious prosecution would seem to be as follows: *First,* if the action is still pending, the plaintiff therein may show in that action that he had probable cause for commencing the suit by obtaining a judgment therein against the defendant, and he should not be called upon to show such fact in a second action until he has had this opportunity of showing it in the first; *second,* and if the action has terminated against the defendant, then there is already an adjudication against him, showing conclusively that the plaintiff had probable cause for commencing the action. When neither of these reasons apply, we suppose the action for malicious prosecution may be maintained, if the other necessary facts can be shown. If the plaintiff has neither shown nor is attempting to show, by an action in which he is plaintiff, that he had probable cause for commencing his action, then the defendant may show, in an action brought by himself, that the plaintiff did not have probable cause. But suppose the law were otherwise. Suppose that the party commences an action maliciously, and without probable cause, and then, for the purpose of harassing the defendant, gives notice that he will take depositions in several remote places in the United States, and thereby puts the defendant to great trouble, inconvenience, and expense in attending himself, or employing counsel to attend, for the purpose of cross-examining the witnesses, etc.; and then suppose that no such depositions are taken, or were intended to be taken,—can the plaintiff relieve himself from liability to an action for malicious prosecution by simply dismissing his action? Will the defendant have no remedy in such a case?" pp. °562-°563.

It is thus the law that a voluntary dismissal of the prior action without prejudice may be a termination in favor of the person against whom that action was brought.

(12) In order for a plaintiff to recover in an action for malicious prosecution, he must establish that he suffered some actual damages as a result of the defendant's action. In some jurisdictions, the plaintiff must plead and prove special damages in order to maintain such an action. Special damages are usually held to include either the arrest of the plaintiff's person, seizure of his property, or other special interference with his person or property. The requirement of alleging "special damages" in a malicious prosecution action is known as the "English Rule." There exists in the United States a split of authority as to its application. See 52 Am. Jur. 2d, Malicious Prosecution §§ 9, 10, and 11, at pp. 191-194. The Supreme Court of Kansas has specifically rejected the special damages requirement in actions for malicious prosecution. In *Investment Co. v. Burdick,* 67 Kan. at 337, this court adopted the principle that an action may be maintained for the "malicious prosecution of a civil action" where the defendant in

such prosecution alleges and shows that he has sustained any damage over and above the taxable costs in the case. *Marbourg v. Smith,* 11 Kan. at *554. See also *Tire Co. v. Kirk,* 102 Kan. 418, 421, 170 Pac. 811 (1918), where it is held that damages are recoverable for the malicious prosecution of an ordinary civil action, even where there has been no arrest, attachment, or other special interference with person or property. The damages recoverable in a malicious prosecution action are stated in the Restatement § 681 to be as follows:

"(a) the harm normally resulting from any arrest or imprisonment, or any dispossession or interference with the advantageous use of his land, chattels or other things, suffered by him during the course of the proceedings, and

"(b) the harm to his reputation by any defamatory matter alleged as the basis of the proceedings, and

"(c) the expense that he has reasonably incurred in defending himself against the proceedings, and

"(d) any specific pecuniary loss that has resulted from the proceedings, and

"(e) any emotional distress that is caused by the proceedings." p. 469.

This section of the Restatement was referred to with approval in *Vaughan v. Hornaman,* 195 Kan. at 298-299. In *Vaughan,* the damages alleged, including hindrance and harassment in the operation of plaintiff's business, diminished earning capacity, injury to plaintiff's personal reputation, anxiety and pain of mind, were held to be sufficient to support the action for malicious prosecution. Likewise, in *Stalker v. Drake,* 91 Kan. at 148, it is stated that, in such an action, a plaintiff may recover, in addition to pecuniary loss, such damages as humiliation, stress, and injury to his standing. It is clear that Kansas has specifically rejected the requirement of some special interference with plaintiff's person or property in order to maintain an action for malicious prosecution. It should also be noted that exemplary damages may be recoverable, provided actual damages are proved. *Stalker v. Drake,* 91 Kan. 142, Syl. ¶ 3; *Schippel v. Norton,* 38 Kan. 567, 16 Pac. 804 (1888).

In cases where attorneys are sued for malicious prosecution of a civil action, there are special rules to be applied in determining an attorney's liability. In Restatement ¶ 674, comment *d*, the liability of an attorney in such an action is stated to be as follows:

"*d. Attorneys.* An attorney who initiates a civil proceeding on behalf of his client or one who takes any steps in the proceeding is not liable if he has probable

cause for his action (see § 675); and even if he has no probable cause and is convinced that his client's claim is unfounded, he is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim. (See § 676.) An attorney is not required or expected to prejudge his client's claim, and although he is fully aware that its chances of success are comparatively slight, it is his responsibility to present it to the court for adjudication if his client so insists after he has explained to the client the nature of the chances.

"If, however, the attorney acts without probable cause for belief in the possibility that the claim will succeed, and for an improper purpose, as, for example, to put pressure upon the person proceeded against in order to compel payment of another claim of his own or solely to harass the person proceeded against by bringing a claim known to be invalid, he is subject to the same liability as any other person. . . . An attorney may also be subject to liability if he takes an active part in continuing a civil proceeding properly begun, for an improper purpose and without probable cause." pp. 453-454.

We approve section 674 and comment *d* as a fair statement of the law to govern the liability of attorneys in Kansas for malicious prosecution of a civil action. The most recent case involving the liability of an attorney in a malicious prosecution action was before this court in 1926 in *Maechtlen v. Clapp,* 121 Kan. 777. In *Maechtlen,* the liability of an attorney is stated in syllabus ¶¶ 1 and 2 of the opinion as follows:

1. "An attorney who knowingly permits a client to make him an instrument in prosecuting a groundless action against another to accomplish some evil purpose of the client, may be held accountable to the injured person in an action for malicious prosecution, but he is not responsible if he commences and prosecutes the action in good faith without knowledge of the fraudulent purpose of his client or that the claim sued upon is groundless.

2. "Unless the groundless character of the cause and the malicious motive of his client is brought to his attention, an attorney may advise and act on the assumption that the facts related by his client are honestly given and are substantially correct; and further, that it is not his duty to go elsewhere for information respecting the honesty of the claim or the good faith of his client."

It should be noted that the standard of responsibility placed on an attorney in *Maechtlen* does not rise to the same level as that required in the Restatement (Second) of Torts. The opinion in *Maechtlen v. Clapp,* 121 Kan. at 781, cites *Bicknell v. Dorion,* 33 Mass. (Pick.) 478, to the effect that an attorney at law is not liable for bringing a civil action unless he commenced it without the authority of the party in whose name it was sued, or unless there was a conspiracy between them to bring a groundless suit, the attorney knowing it to be groundless, and commenced without any intention or expectation of maintaining it. We reject any such

limitation on the liability of an attorney and adopt the general statement of the law as set forth in Restatement (Second) of Torts § 674 (1976) which is quoted above.

We further reject the statement in *Maechtlen* that an attorney may act on the assumption that the facts related by his client are honestly given and are substantially correct and that it is not his duty to go elsewhere for information respecting the honesty of the claim or the good faith of his client. Such a rule is degrading to the legal profession and not acceptable in these times. This court in the Code of Professional Responsibility (225 Kan. xciii) has established general standards of behavior required of the Kansas legal profession. Canon 7 of the Code requires a lawyer to represent a client zealously within the bounds of the law. DR 7-102 specifically states that in his representation of a client, a lawyer shall not file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another. Under DR 6-101, a lawyer is required to represent a client competently and is directed to not handle a legal matter without preparation adequate in the circumstances. As noted above, the rule is well established in Kansas that the advice of counsel as to the institution of a civil action, acted upon in good faith, will absolve the client from liability for malicious prosecution only where the facts known to the informant and *all which can be found by a diligent effort to acquire information,* have been presented to the attorney. *Carnegie v. Gage Furniture, Inc.,* 217 Kan. at 569. In most cases, the clients of attorneys are not knowledgeable in the law, nor do they know how or where further information about the case may be acquired. It is obvious that the client must rely upon his lawyer to make a reasonable investigation of his case. Likewise, the attorney must accept the obligation to conduct a reasonable investigation in an attempt to find what the true facts are before filing a civil action on behalf of his client. In determining probable cause in a malicious prosecution action brought against an attorney, a jury may properly consider not only those facts disclosed to counsel by the client but also those facts which could have been learned by a diligent effort on the attorney's part. In determining the purpose of the attorney in filing a civil action, a jury may properly consider as evidence of good faith or absence of malice

the fact that the attorney, before filing an action, made a demand upon his client's adversary and extended to him the opportunity to respond with his version of the facts. This should be the standard procedure unless an immediate filing of an action is required by the imminent running of the statute of limitations or some other good reason.

With these general principles in mind, we turn now to the specific issues which have been raised on the appeal. Simply stated, it is the position of Dr. Nelson that dismissal of his malicious prosecution action contained in count 1 was premature because the facts had not been adequately developed by discovery at the time the order of dismissal was entered. He contends that, at that time, he had commenced the discovery process which had been successfully opposed by counsel. He further maintains that all necessary elements for a cause of action of malicious prosecution of a civil action are alleged in his petition and that the scanty record before the trial court did not permit dismissal of his claim as a matter of law until the facts could be determined. It is the position of the defendants that the plaintiff failed in his petition, when considered in light of the other documents presented to the court, to sufficiently allege the necessary elements of probable cause, malice, and special injury, and further that, as a matter of law, there has been no termination of the prior malpractice action in favor of the plaintiff.

We have concluded that the dismissal of the plaintiff's first claim based on the theory of malicious prosecution of a civil action was improperly granted. The allegations of the plaintiff's petition are set forth above. That petition clearly alleges the essential elements of an action for malicious prosecution. It is clearly alleged that the defendant attorneys initiated and continued the prior medical malpractice proceeding against the plaintiff in Sedgwick County without probable cause and with malice and that the action terminated in plaintiff's favor on October 10, 1977, which was the day the action was dismissed without prejudice as against Dr. Nelson. The petition in count 1 further alleged that, as a direct result of the defendants' actions, the plaintiff was damaged. Whether or not there was probable cause or improper purpose in filing the action could not be determined as a matter of law in the vacuum of facts in the case which existed at the time the plaintiff's action was dismissed. As noted above, it was not

necessary for the plaintiff to plead or prove that a conspiracy existed between the Van Novers and their attorneys.

We also find no merit in the contention that the plaintiff's amended petition was defective because it failed to allege or prove special damages. That requirement has been specifically rejected by the Kansas cases. *Investment Co. v. Burdick,* 67 Kan. at 337. Likewise, we reject the contention of the defendants that by procuring a stipulation and order of dismissal, Dr. Nelson is barred from bringing an action for malicious prosecution because there has been no termination in his favor. As noted above, a voluntary dismissal of the prior action without prejudice under Kansas law may be a termination in favor of the defendant in that action, if the action is not commenced again. For these reasons, we hold that the trial court erred by prematurely dismissing plaintiff's first claim against the defendants based upon a theory of malicious prosecution of a civil action.

We turn now to the issue whether the trial court erred in dismissing Dr. Nelson's second claim against defendants which asserted a theory of liability based upon professional negligence. In his petition, plaintiff alleges in substance that the defendants were negligent in failing to investigate the claim against Dr. Nelson and in continuing to prosecute the claim having knowledge that the claim against the plaintiff was unjust and totally without merit. The district court rejected the plaintiff's second claim, holding that an attorney cannot be held liable to a person other than his client on the basis of negligence alone. In support of his position the plaintiff relies in part on DR 7-102(a) of the Canons of the Code of Professional Conduct which, in substance, prohibits an attorney, in his representation of a client, from asserting claims which he knows to be groundless or when it is obvious that such action would serve merely to harass or maliciously injure another. This issue was squarely presented to the Court of Appeals in *Young v. Hecht,* 3 Kan. App. 2d 510, 597 P.2d 682, *rev. denied* 226 Kan. 793 (1979). In *Young,* the Court of Appeals held that an attorney cannot, in the absence of special circumstances, be held liable for the consequences of his professional negligence to anyone other than his client. There are many cases on this subject in the annotation in 45 A.L.R.3d 1181. The traditional rule has been that an attorney will be held liable for negligence only to his client. The rationale of that rule is that

there can be no action against an attorney for professional negligence in the absence of some privity of contract between the plaintiff and the attorney. More recently, the strict requirement of privity of contract has been eased in situations where an attorney has rendered services which he should recognize as involving a foreseeable injury to some third-party beneficiary of the contract. These cases usually involve the negligence of attorneys in will drafting and in the examination of real estate titles. We have been cited no cases, and we have found none, where an attorney has been held liable to his client's adversary in prior civil litigation on the basis of professional negligence alone.

In *Tappen v. Ager*, 599 F.2d 376 (10th Cir. 1979), the United States Court of Appeals approved the position of the district court that an attorney engaged in discharging professional duties on behalf of his client cannot be held liable for negligence toward a third person, for the reason that the attorney's paramount and exclusive duty is to his client. The court noted that there had been some relaxation of the doctrine in some states but this had arisen only in cases where the attorney's services were in part for the benefit of a third party. No such relaxation is to be permitted where the relationship is an adversary one. In that situation, the lawyer's duty must be to his client alone and there is no room for any duty running to the client's adversary.

The rationale of the cases which have rejected the concept of liability of an attorney to a third party for professional negligence is based upon public policy. A leading case in this area is *Norton v. Hines*, 49 Cal. App. 3d 917, 123 Cal. Rptr. 237 (1975), where the court stated:

"In the case at bar a former litigant is suing adverse counsel. Clearly, an adverse party is not an intended beneficiary of the adverse counsel's client. If a cause of action exists against attorneys for the reasons alleged here, it must be pleaded as an action for malicious prosecution. . . .

"Malicious prosecution is a specific tort that developed in the criminal field out of a need to adjust two highly important social interests. The first is the interest of society in the efficient enforcement of the criminal law, which requires that private persons who aid in the enforcement of the law should be given an effective protection against the prejudice which is likely to arise from the termination of the prosecution in favor of the accused. The second is to protect the individual citizen against unjustifiable and oppressive litigation of criminal charges, which involves pecuniary loss, distress and loss of reputation. [Citation omitted.] In general, the same considerations apply to wrongful initiation of civil proceedings. The courts are open to every citizen to sue, subject only to the penalty of lawful costs if the

action is unsuccessful. [Citation omitted.] Public policy requires that a large degree of freedom of access to the courts be accorded to all persons for the settlement of their private disputes. At the same time the courts can not be 'used' by a person who sues another without probable cause and with malice. The tort of malicious prosecution is designed to place restraint on a would-be plaintiff while furnishing protection to a wrongfully sued defendant. It naturally follows that the same general principles should apply to the attorney representing the litigant initiating the action. The attorney owes a duty to his client to present his case vigorously in a manner as favorable to the client as the rules of law and professional ethics will permit. He is an advocate and an officer of the court. He is cognizant of the public policy that encourages his clients to solve their problems in a court of law. In our opinion, when representing his client in the initiation of a lawsuit, he should not be judged by a different standard.   .   .   .   We believe the public policy of favoring free access to our courts is still viable. However, if Norton's cause of action against attorneys for negligence is permitted, this policy will be subverted. The attorney must have the same freedom in initiating his client's suit as the client. If he does not, lawsuits now justifiably commenced will be refused by attorneys, and the client, in most cases, will be denied his day in court." pp. 921-924.

Cases from other states which are in accord are the following: *Merritt-Chapman & Scott Corp. v. Elgin Coal, Inc.,* 358 F. Supp. 17 (E.D. Tenn. 1972); *Lyddon v. Shaw,* 56 Ill. App. 3d 815, 372 N.E.2d 685 (1978); *Pantone v. Demos,* 59 Ill. App. 3d 328, 375 N.E.2d 480 (1978); *Hill v. Willmott,* 561 S.W.2d 331 (Ky. App. 1978); *Brody v. Ruby,* 267 N.W.2d 902 (Iowa 1978); *Bickel v. Mackie,* 447 F. Supp. 1376 (N.D. Iowa 1978); *Martin v. Trevino,* 578 S.W.2d 763 (Tex. Civ. App. 1978); *Spencer v. Burglass,* 337 So. 2d 596 (La. App. 1976), *writ denied* 340 So. 2d 990 (1977).

The lawyers of Kansas have traditionally represented their clients with zeal and professional competence in accordance with the highest traditions of the legal profession. Without their professional endeavors the basic liberties of the people might well have disappeared long ago. Kansas lawyers have made outstanding contributions in their representation of the poor and underprivileged, and in the development of new principles of law to meet the needs of our changing society. They must not be discouraged in those endeavors.

In representing their clients, lawyers are expected to use the legitimate sidearms of a warrior. It is only when a lawyer uses the dagger of an assassin that he should be subjected to discipline or to personal liability. We believe that the public is adequately protected from harassment and abuse by an unprofessional member of the bar through the means of the traditional cause of

action for malicious prosecution. We, therefore, hold in accordance with established law, that an attorney cannot be held liable for the consequence of his professional negligence to his client's adversary. We further hold that a violation of the Code of Professional Responsibility does not alone create a cause of action against an attorney in favor of a third party. The remedy provided a third-party adversary is solely through an action for malicious prosecution of a civil action. It follows that the district court was correct in dismissing the plaintiff's second cause of action based upon a theory of professional negligence.

The judgment of the district court is reversed as to the dismissal of the plaintiff's first claim based upon a theory of malicious prosecution of a civil action. The judgment is affirmed as to the dismissal of the plaintiff's second claim based on professional negligence. The case is remanded to the trial court to permit the parties to proceed with discovery so that the facts may be developed and the rights of the parties determined as to plaintiff's claim for malicious prosecution of a civil action.

HOLMES, J., not participating.