(910 P.2d 223)
No. 72,298

Dr. Don B. W. Miskew, *Appellant,* v. Paul Hess, *Defendant,*
and Lynn Johnson, *Appellee.*

Opinion filed January 26, 1996.

*Michael E. Callen,* of Boddington & Brown, Chtd., of Kansas City, and *David T. Greis, Richard D. Fry,* and *William H. Pickett,* of William H. Pickett, P.C., of Kansas City, Missouri, for appellant.

*Barbara A. Harmon* and *J. Eugene Balloun,* of Shook, Hardy & Bacon P.C., of Overland Park, for appellee Lynn Johnson.

Before Green, P.J., Lewis, J., and James L. Burgess, District Judge, assigned.

Green, J.: Dr. Don B. W. Miskew appeals from summary judgment granted in favor of Lynn Johnson in Dr. Miskew's malicious prosecution claim. On appeal, Dr. Miskew contends that the trial court inappropriately granted summary judgment because genuine issues of material fact remained on three of the essential elements of his malicious prosecution claim. We disagree, holding that any factual disputes were not material to Dr. Miskew's claim and that Dr. Miskew failed to prove all of the required elements for a valid malicious prosecution action. Dr. Miskew also argues that the trial court lacked authority to consider Johnson's affidavit and other materials submitted in Johnson's reply brief in support of his summary judgment motion. Dr. Miskew further argues that the trial court failed to allow him an opportunity to dispute the materials. We disagree. Accordingly, we affirm the judgment of the trial court.

FACTS:

This malicious prosecution action stems from a medical malpractice suit brought by John Bealer against Dr. Miskew. In the malpractice suit, the trial court granted summary judgment to Dr. Miskew, and Bealer appealed. The facts surrounding Bealer's medical problems, which are relevant to the present appeal, are as follows: On June 22, 1982, Bealer injured his right knee and ankle while working as the manager of a Village Inn Restaurant in Overland Park. Dr. Miskew examined Bealer the next day at his office and diagnosed Bealer's condition as a right knee ligament strain and a right ankle sprain. Bealer later claimed that during the examination he told Dr. Miskew that he was allergic to aspirin. The next day, June 24, 1982, Bealer telephoned Dr. Miskew and complained of pain in his leg. Dr. Miskew prescribed a drug called Zomax, which apparently contained aspirin, for the pain. Later that same day, Bealer obtained the Zomax and took two pills. Thirty minutes after taking the pills, Bealer began vomiting. Bealer was rushed to the hospital. His initial symptoms were exhaustion, shock, nervousness, labored breathing, and a swollen face. Bealer's doctors told him that those symptoms were caused by his adverse reaction to the Zomax. Bealer's labored breathing was later diagnosed as asthma in November 1982. Bealer claimed that his asthma was caused by the Zomax.

On September 15, 1984, Bealer filed a medical malpractice action against Dr. Miskew, alleging that Dr. Miskew negligently prescribed the Zomax. Paul Hess, an attorney, filed the initial malpractice action for Bealer. In answering the petition, Dr. Miskew asserted that the claim was barred by the 2-year statute of limitations.

Because Bealer failed to prosecute his petition, the trial court dismissed the case on March 12, 1985. But on April 30, 1986, the trial court granted Bealer's motion to set aside the earlier dismissal.

In September 1986, Johnson entered his appearance as Bealer's attorney. Johnson told David Erickson, Dr. Miskew's attorney, that he planned to dismiss the case without prejudice to evaluate the medical and legal issues in the case. The trial court granted John-

son's motion to dismiss without prejudice. Erickson later wrote Johnson and requested that he complete his analysis of the case and decide whether he would refile the case. A few months later, Johnson wrote Erickson and stated that he planned to refile the malpractice lawsuit against Dr. Miskew. In his letter, Johnson stated that he believed that Bealer had suffered a permanent injury as a result of his taking the Zomax.

On June 30, 1987, Johnson refiled the Bealer lawsuit against Dr. Miskew. Claiming that the statute of limitations barred Bealer's action, Dr. Miskew moved for summary judgment.

In opposing Dr. Miskew's motion for summary judgment, Johnson argued that, under *Cleveland v. Wong*, 237 Kan. 410, 701 P.2d 1301 (1985), Bealer's claim was timely. Johnson argued that because Bealer was unaware of the permanent nature of his injury until he was diagnosed with asthma in November 1982, the 2-year statute of limitations was tolled until November 1982. Therefore, Johnson argued, Bealer's September 1984 petition was timely filed.

The trial court, however, distinguished the *Wong* case and granted Dr. Miskew's motion for summary judgment. Johnson appealed, and in an unpublished opinion, we affirmed the trial court's judgment.

Dr. Miskew then filed his malicious prosecution action against Paul Hess and Johnson. Nevertheless, all of Dr. Miskew's claims of malicious prosecution are directed at Johnson. Dr. Miskew moved for summary judgment. He argued that because the initial malpractice action was untimely, Johnson had refiled the suit without probable cause to believe that the suit had merit. He further alleged that Johnson refiled the suit solely for the improper purpose of obtaining a large contingency fee. Johnson responded with his own motion for summary judgment. He argued that Dr. Miskew had failed to prove all of the required elements for a valid malicious prosecution claim.

Responding to Johnson's motion for summary judgment, Dr. Miskew argued that Johnson had no factual probable cause to bring suit because no evidence existed linking the ingestion of the Zomax to Bealer's asthma. Johnson filed a reply brief to Dr. Miskew's response. Johnson attached an affidavit asserting that he had con-

tacted Dr. Constantine Falliers, and that Dr. Falliers had agreed to testify that a causal link existed between the Zomax and Bealer's asthma.

The trial court held a hearing and granted Johnson's motion for summary judgment. The court concluded that no genuine issues of material fact existed and that Dr. Miskew had failed to prove three of the essential elements of a malicious prosecution claim. Dr. Miskew appealed.

Dr. Miskew first argues that the trial court inappropriately granted summary judgment because genuine issues of material fact remained on certain essential elements of his malicious prosecution claim. Before we address this issue, we must consider the rules regarding summary judgment. Our Supreme Court has stated:

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]" *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

"Summary judgment is proper where the only question or questions presented are questions of law." *Fletcher v. Nelson*, 253 Kan. 389, 391, 855 P.2d 940 (1993); see *Bradley v. Board of Butler County Comm'rs*, 20 Kan. App. 2d 602, 604, 890 P.2d 1228 (1995).

In reviewing the appellate record and the parties' briefs, we note that Dr. Miskew does not dispute any material facts. Rather, Dr. Miskew challenges the trial court's conclusions of law that he had failed to show a prima facie case of malicious prosecution. Because there is no factual dispute, we must decide if Johnson was entitled to judgment as a matter of law. " 'This court's review of conclusions of law is unlimited.' " *City of Chanute v. Polson*, 17 Kan. App. 2d

159, 160, 836 P.2d 6 (1992) (quoting *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 [1988]).

The elements of a malicious prosecution claim are: "(1) that defendant initiated, continued, or procured the proceeding of which complaint is made; (2) that defendant in doing so acted without probable cause; (3) that defendant must have acted with malice; (4) that the proceedings terminated in favor of plaintiff; and (5) that plaintiff sustained damages." *Lindenman v. Umscheid*, 255 Kan. 610, 624, 875 P.2d 964 (1994) (citing *Nelson v. Miller*, 227 Kan. 271, 276, 607 P.2d 438 [1980]).

Although the parties are not disputing the existence of the first and last elements, they are disputing the existence of the other three elements. The trial court determined that Dr. Miskew had failed to prove the elements of probable cause, malice, and favorable termination.

## A. PROBABLE CAUSE.

Dr. Miskew argues that the trial court erred by granting summary judgment to Johnson because Johnson lacked both factual and legal probable cause to refile the lawsuit.

"Probable cause for instituting a proceeding exists when there is reasonable grounds for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious or prudent person in the belief that the party committed the act of which he or she is complaining." *Lindenman*, 255 Kan. at 624. See *Nelson*, 227 Kan. at 277. Probable cause to institute civil proceedings requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication. See *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 123 L. Ed. 2d 611, 625, 113 S. Ct. 1920 (1993) (citing Restatement [Second] of Torts § 675, comment e, pp. 454-55 [1977]). Furthermore, "[i]f the facts are undisputed, the question of probable cause is one for the court to decide as a matter of law." *Nelson*, 227 Kan. at 277.

In *Nelson*, our Supreme Court expressly adopted Restatement § 674 and comment d as a fair statement of the law to govern liability of attorneys in Kansas for malicious prosecution of a civil

action. Restatement § 674, comment d in turn cites Restatement § 675, which defines the existence of probable cause as follows:

"One who takes an active part in the initiation, continuation or procurement of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either

(a) correctly or reasonably believes that under those facts the claim may be valid under the applicable law, or

(b) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information."

First, Dr. Miskew contends that Johnson did not have probable cause to refile the lawsuit because it was barred by the statute of limitations. Dr. Miskew cites *Nelson* and argues that we should only look to the time when the action was filed when evaluating probable cause. The *Nelson* court stated that "[i]n cases of malicious prosecution, the inquiry as to want of probable cause is limited to the facts and circumstances as they appeared to defendant at the time the prosecution was commenced." 227 Kan. at 277.

Here, Johnson failed to investigate the statute of limitations issue before refiling the malpractice suit. Consequently, if we applied the *Nelson* standard as suggested by Dr. Miskew, Johnson would have had no reasonable belief that the malpractice claim was filed timely. But this strict reading of *Nelson* could lead to unfair results. For example, a plaintiff's attorney would lack probable cause in a fraud suit if he failed to investigate an affirmative defense, which ultimately led to the dismissal of the case, before filing the suit. Furthermore, under Dr. Miskew's interpretation of *Nelson*, that same attorney would still lack probable cause even though he later discovered the existence of objective information that would have shown he had probable cause to file the suit despite defendant's affirmative defense.

The *Nelson* court also stated that a jury may consider not only those facts disclosed to counsel by the client but also those facts that could have been learned by a diligent effort on the attorney's part. "In determining probable cause in a malicious prosecution action brought against an attorney, a jury may properly consider not only those facts disclosed to counsel by the client but also those

facts which could have been learned by a diligent effort on the attorney's part." 227 Kan. at 284.

Furthermore, both the *Nelson* court and the Restatement indicated that other periods of time may be relevant in determining probable cause. For example, even if a person properly initiated a suit, that person could still be held liable for malicious prosecution for wrongfully continuing the suit when it became apparent that probable cause was lacking. See *Nelson*, 227 Kan. at 276; Restatement § 674, comment c. Probable cause is not a static term in a malicious prosecution action. Consequently, a trial court may be called upon to determine not only whether probable cause existed when the suit was initiated but also whether probable cause continued to exist after the suit was filed.

We must consider whether the information Johnson learned after his refiling of the suit would have permitted a prudent person to believe that the malpractice claim was not time barred by the statute of limitations. K.S.A. 60-513(a)(7) provides that a medical malpractice action must be brought within 2 years. This 2-year time period is qualified by K.S.A. 60-513(c), which states:

"A cause of action arising out of the rendering of or the failure to render professional services by a health care provider shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party . . . ."

Johnson's belief in the validity of Bealer's claim rested on the case of *Cleveland v. Wong*, 237 Kan. 410. In *Wong*, the plaintiff suffered incontinence and impotence for over 20 months following prostate surgery. The plaintiff filed suit more than 2 years after the surgery. Dr. Wong argued that because plaintiff's injuries were reasonably ascertainable immediately following the surgery, the statute of limitations began running at once, thus barring plaintiff's claim. Our Supreme Court disagreed, holding that because Dr. Wong and another physician had advised plaintiff that temporary incontinence and impotence were expected side effects of the prostate surgery, plaintiff "had no reason to suspect that those conditions were permanent or that those conditions were the result of

any negligence or malpractice on the part of the defendant." 237 Kan. at 414.

Likewise, in opposing Dr. Miskew's motion for summary judgment, Johnson argued that because Bealer had no reason to suspect his breathing difficulties were permanent until he was diagnosed with asthma in November 1982, his injury was not reasonably ascertainable until that time. In the malicious prosecution case, the trial court also determined that immediately following Bealer's adverse reaction to the Zomax, "[t]here was no indication or diagnosis . . . that the reaction caused by the Zomax caused Mr. Bealer to contract asthma." Moreover, Dr. Miskew did not challenge this finding.

In *Humes v. Clinton*, 246 Kan. 590, 597-99, 792 P.2d 1032 (1990), the appellant made a similar argument, which was unsuccessful. But, our Supreme Court accepted a similar argument in *Jones v. Neuroscience Assocs., Inc.*, 250 Kan. 477, 481-89, 827 P.2d 51 (1992). Although *Humes* and *Jones* had not been decided at the time Johnson made his argument and although the facts of the *Wong* case are distinguishable, Johnson's argument was reasonable under Kansas law. Thus, Johnson had probable cause to refile the suit.

Next, Dr. Miskew argues that Johnson had no factual probable cause to bring suit because no evidence existed to link the ingestion of the Zomax to Bealer's permanent injury, asthma. Dr. Miskew first raised the factual probable cause issue in his response to Johnson's motion for summary judgment. Johnson then filed a reply brief asserting that he had probable cause to believe the Zomax caused Bealer's asthma. Johnson attached an affidavit attesting that, before refiling the malpractice action, Johnson had contacted Dr. Constantine Falliers about the case. The affidavit stated that Dr. Falliers told Johnson he would be willing to testify that there was a relationship between the Zomax and Bealer's asthma. Taken at face value, the affidavit established reasonable grounds for Johnson to believe that Bealer's claim was valid. See *Nelson*, 227 Kan. at 277; Restatement § 675.

Dr. Miskew, however, argues that the affidavit contains hearsay and should not have been considered by the trial court. Johnson correctly points out that Dr. Miskew did not raise his hearsay ob-

jection at the summary judgment hearing but instead filed an objection to the court's proposed journal entry of judgment. "In order to raise the admissibility of evidence as an issue on appeal, the record must show a timely and specific objection. K.S.A. 60-404." *McKissick v. Frye,* 255 Kan. 566, 582, 876 P.2d 1371 (1994).

In any event, K.S.A. 60-460 defines hearsay evidence as "a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." Dr. Miskew argues that Johnson offered the affidavit solely to prove the existence of a causal link between the Zomax and Bealer's asthma. Johnson argues he offered the affidavit to show the basis for his reasonable belief in the existence of the medical link; thus, the affidavit was not offered to prove the truth of the matter asserted. See *State v. Humphrey,* 252 Kan. 6, 14, 845 P.2d 592 (1992). Dr. Miskew's hearsay argument fails.

Dr. Miskew also challenges the affidavit on the grounds that the documents attached were not sworn to or certified as required by K.S.A. 60-256(e). The documents attached to Johnson's affidavit consisted of two letters from Johnson to Dr. Falliers and a copy of Bealer's medical history. The letters asked Dr. Falliers to analyze the case, and the medical history was sent along with the letters. The only relevant portion of the affidavit, Johnson's statement that Dr. Falliers agreed to testify as to the causal link between the Zomax and Bealer's asthma, was not part of the attachments. Thus, regardless of whether the attachments to the affidavit were properly admitted, those attachments were not critical in swaying the trial court to grant Johnson's summary judgment motion. Consequently, the attachments furnish no reason for reversing the judgment of the trial court. See *Hagedorn v. Stormont-Vail Regional Med. Center,* 238 Kan. 691, 701, 715 P.2d 2 (1986). Further, Dr. Miskew did not raise this objection in a timely fashion at the trial court level.

Based on his conversation with Dr. Falliers, Johnson had a reasonable belief in the validity of Bealer's claim. Thus, Johnson had factual probable cause to bring suit. See *Nelson,* 227 Kan. at 277; Restatement § 675.

## B. IMPROPER MOTIVE.

In stating that malice was an essential element of a malicious prosecution action, the *Nelson* court explained the meaning of this term:

"Malice is an essential element of an action for malicious prosecution but it is not restricted to the personal hatred, spite, or revenge of the one who institutes the prosecution. It is enough if the prior action was instituted for any improper or wrongful motive. . . . To subject a person to liability for wrongful use of civil proceedings, the proceedings must have been initiated or continued primarily for a purpose other than that of securing the proper adjudication of the claim on which they are based. Any other purpose constitutes malice, as that term is used in civil actions for malicious prosecution." 227 Kan. at 278.

Next, Dr. Miskew argues that the trial court erred by concluding that Johnson did not have an improper purpose in refiling the medical malpractice action. First, Dr. Miskew contends that because Johnson never made any demands upon Dr. Miskew before refiling the suit, this fact shows that Johnson acted with an improper purpose. As the *Nelson* court observed, by making a demand upon his client's adversary and giving him an opportunity to respond, the attorney may show an absence of malice:

"In determining the purpose of the attorney in filing a civil action, a jury may properly consider as evidence of good faith or absence of malice the fact that the attorney, before filing an action, made a demand upon his client's adversary and extended to him the opportunity to respond with his version of the facts." 227 Kan. at 284-85.

Johnson responds by asserting that he did make a demand on Dr. Miskew. As stated earlier, Johnson told Dr. Miskew's attorney that he planned to refile the suit. Thus, it appears Dr. Miskew had an opportunity to respond with his version of the facts as *Nelson* suggests. See *Goss v. Reid*, 242 Kan. 782, 786-87, 751 P.2d 131 (1988) (construing *Nelson* as requiring that every defendant be notified before an action is filed). Moreover, it is likely that the previous demand rule stated in *Nelson* was intended to apply to the initiation or first filing of a lawsuit. In this case, however, the actual malpractice suit was first filed by Paul Hess, Bealer's first attorney. Dr. Miskew filed an answer to that suit, and the action was later dismissed.

Second, Dr. Miskew argues that an improper purpose can be inferred from the fact that Johnson accepted the case based on the magnitude of his potential contingent fee. Dr. Miskew bases his contention on Johnson's statement that he probably would not have taken Bealer's case if Bealer's only compensable injury had been his immediate adverse reaction to the Zomax. In explaining his reason for accepting Bealer's case, Johnson testified that his firm generally only accepts medical malpractice cases that involve a substantial injury:

"Q. Now, do I understand correctly, you would have never got into this case unless Mr. Bealer was diagnosed as having triad asthma in November of '82?

"A. No, what I said was, I don't think it would have been financially feasible for our firm to have pursued a medical malpractice case if the only injury had been the transient reaction that he suffered immediately upon ingesting the Zomax, that, in our practice, we normally would not pursue a medical malpractice case unless there is substantial permanent injury, because it's simply not economically feasible to do so."

In explaining that a contingent fee agreement with a client cannot be used to charge the attorney with an improper motive or purpose, the authors of Restatement § 674, comment d observed:

"An attorney who initiates civil proceedings on a contingent-fee basis with his client is not for that reason to be charged with an improper motive or purpose, since the contingent fee is a legitimate arrangement and the interest of the attorney in receiving it is merely the ordinary interest of a professional man in being paid for his services."

Because the Restatement clearly indicates that a contingent fee arrangement shall not be evidence of malice, Dr. Miskew's argument must fail.

Third, Dr. Miskew argues that an improper purpose can be inferred from Johnson's reliance on the *Wong* and *Humes* cases. Dr. Miskew argues that Johnson deliberately misstated the facts and holdings of both cases in a bad faith attempt to defeat Dr. Miskew's statute of limitations defense. Nevertheless, the record lacks any indication that Johnson misstated the facts or the holdings of either case. And Dr. Miskew fails to show any such deliberate misconstruction of the law. Finally, as previously discussed, Johnson's re-

liance on those cases was reasonable under the objective standard test.

Fourth, Dr. Miskew alleges that Johnson refiled the case solely to protect himself from a professional malpractice action. The record contains no evidence that Bealer ever considered a malpractice action against Johnson or that Johnson needed to protect himself from one. Johnson correctly points out that it was Paul Hess who initially filed the case and who missed the 2-year statute of limitations deadline. Consequently, Dr. Miskew's argument must fail.

Finally, Dr. Miskew contends that Johnson's failure to investigate the statute of limitations problem creates an inference of malice. Dr. Miskew points out that he raised the statute of limitations defense in his answer to the first malpractice action filed by Paul Hess. Dr. Miskew implies that Johnson deliberately ignored the statute of limitations issue and maliciously refiled the case. However, there is no evidence that Johnson knew of the problem and consciously chose to ignore it. Accordingly, we conclude that Dr. Miskew has failed to show malice in this matter.

### C. FAVORABLE TERMINATION.

One of the elements of a malicious prosecution claim is that "the prior civil proceeding must have terminated in favor of the person against whom the prior civil action was brought." *Nelson v. Miller*, 227 Kan. 271, 280, 607 P.2d 438 (1980). In Bealer's medical malpractice case, the trial court granted summary judgment to Dr. Miskew on the grounds that the statute of limitations barred the claim. In the instant case, the trial court ruled that the previous summary judgment on statute of limitations grounds did not constitute a favorable termination for purposes of Dr. Miskew's malicious prosecution action. Dr. Miskew challenges this conclusion of law.

Whether a grant of summary judgment on statute of limitations grounds constitutes a favorable termination for purposes of a malicious prosecution action is a question of first impression in Kansas. In adopting the Restatement definition of favorable termination, the *Nelson* court stated:

"Civil proceedings may be terminated in favor of the person against whom they are brought by (1) the favorable adjudication of the claim by a competent tribunal, or (2) the withdrawal of the proceedings by the person bringing them, or (3) the dismissal of the proceedings because of his failure to prosecute them. A favorable adjudication may be by a judgment rendered by a court after trial, or upon demurrer or its equivalent." 227 Kan. at 280 (citing Restatement § 674, comment j).

The *Nelson* court also noted that a favorable termination may result without a trial on the merits, as in a situation where the case is voluntarily dismissed. 227 Kan. at 280-81 (citing *Marbourg v. Smith*, 11 Kan. *554 [1873]).

Johnson cites several cases from other jurisdictions in support of his position that a dismissal on statute of limitations grounds does not constitute a favorable termination. For example, in *Lackner v. LaCroix*, 25 Cal. 3d 747, 159 Cal. Rptr. 693, 602 P.2d 393 (1979), the Supreme Court of California held that termination of an action by a statute of limitations defense is not a favorable termination. The court reasoned that because a favorable termination should indicate the innocence or nonculpability of the accused, the favorable termination must reflect on the merits of the initial action. The court observed that the dismissal of a case based on a statute of limitations defense is not on the merits:

"Dismissal of the underlying action simply does not bear on plaintiff's alleged malpractice. ' " 'Statutes of limitations . . . are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.' [Citations omitted.]" ' Thus the purpose served by dismissal on limitations grounds is in no way dependent on nor reflective of the merits—or lack thereof—in the underlying action. [Citation omitted.] . . .

"Strong policy reasons run against maintenance of a cause of action for malicious prosecution based on an action dismissed for limitations reasons. An essential element of a cause of action for malicious prosecution is the defendant's lack of probable cause for prosecuting the underlying action. [Citation omitted.] The existence of probable cause is thus a matter of proof in the action for malicious prosecution. We have noted policy reasons in support of a limitations defense— the unjustness in requiring an alleged wrongdoer to defend against a stale claim. When the underlying action has been dismissed for that reason and the prevailing

party attempts to assert a cause for malicious prosecution, he necessarily puts in question the same stale issues. Certainly if policy considerations preclude litigation of such issues in the underlying action, the same considerations also preclude it in the malicious prosecution action." 25 Cal. 3d at 751-52.

In *Alcorn v. Gordon*, 762 S.W.2d 809 (Ky. App. 1988), the Kentucky Court of Appeals applied the Restatement and followed the *Lackner* decision. See 762 S.W.2d at 811-12. Courts in other states have applied the same rule. See *Frey v. Stoneman*, 150 Ariz. 106, 722 P.2d 274 (1986); *Union Oil of California, Amsco Div. v. Watson*, 468 So. 2d 349 (Fla. Dist. App. 1985); *Wong v. Panis*, 7 Hawaii App. 414, 772 P.2d 695 (1989); *Rumer v. Zeigler Coal Co.*, 168 Ill. App. 3d 568, 522 N.E.2d 830 (1988).

The prevalence of this general rule is reflected in secondary authorities as well. "[T]he termination must not only be favorable to the accused, but must also reflect the merits and not merely a procedural victory." Prosser and Keeton, Law of Torts § 119, p. 874 (5th ed. 1984). "[G]enerally, the dismissal of a civil action may constitute a favorable termination where it reflects on the merits of the case, but not where it is based on technical or procedural grounds. . . . A favorable termination does not exist where dismissal is due to . . . statute of limitations." 54 C.J.S., Malicious Prosecution § 54. See Annot., 30 A.L.R.4th 572, 595-96; see also 52 Am. Jur. 2d, Malicious Prosecution § 43, pp. 211-12 (favorable termination exists where the issues material to the question of the good faith of the suit were tried and closed by final judgment).

Generally, the accepted rule is that a statute of limitations termination is not a favorable termination for the purposes of a malicious prosecution action. Dr. Miskew fails to furnish any case law to the contrary, and our research discloses none. Instead, Dr. Miskew argues that public policy requires this court to accept a statute of limitations termination as favorable.

Dr. Miskew argues that, under the general rule, attorneys who know that the statute of limitations has expired would have strong incentive to file suit solely to extort a "nuisance value" settlement. Those attorneys would be protected from a malicious prosecution claim by the favorable termination requirement. However, as Johnson points out, any "nuisance value" filings would presumably be

deterred by the specter of attorney sanctions. See K.S.A. 60-211; K.S.A. 60-2007(b).

In view of the authority from other jurisdictions, we adopt the general rule that a statute of limitations termination does not constitute a favorable termination for purposes of a malicious prosecution action.

Dr. Miskew's final argument is that the trial court erred in considering Johnson's affidavit and other materials submitted in his reply brief in support of his summary judgment motion. When Dr. Miskew filed a response to Johnson's motion for summary judgment, Johnson then filed a reply brief. In his reply brief, Johnson asserted that he had probable cause to believe the Zomax caused Bealer's asthma. Johnson attached an affidavit attesting that before he refiled the malpractice action, he had contacted Dr. Constantine Falliers about the case. The affidavit stated that Dr. Falliers told Johnson he would be willing to testify that there was a causal relationship between the Zomax and Bealer's asthma. Dr. Miskew argues that the district court erred by considering the reply brief and affidavit.

First, Dr. Miskew contends that Supreme Court Rule 141 (1995 Kan. Ct. R. Annot. 160) was violated. Rule 141 provides that summary judgment shall not be granted until any party opposing a motion for summary judgment has filed, within 21 days, a memorandum or brief. Dr. Miskew argues that his case should be controlled by *Munkers v. Pomerenke*, 11 Kan. App. 2d 569, 730 P.2d 360 (1986). The *Munkers* court interpreted Rule 141 and held that a district court may not hear a motion for summary judgment until 21 days have passed. See 11 Kan. App. 2d at 573.

Dr. Miskew argues that under Rule 141, he was entitled to 21 days to respond to Johnson's reply brief, because the additional materials submitted in the reply brief amounted to a new motion for summary judgment. We note, however, that Dr. Miskew did not attempt to file a reply brief, nor did he object to Johnson's reply brief at the summary judgment hearing. Dr. Miskew further argues that because he had no avenue to respond, the trial court should not have considered the evidence offered in Johnson's reply brief. Dr. Miskew finally contends that the trial court's consider-

ation of Johnson's affidavit effectively denied him due process of law because he had no opportunity to be heard.

The standard of review governing the trial court's consideration of evidence is abuse of discretion. See *Mays v. Ciba-Geigy Corp.*, 233 Kan. 38, 49, 661 P.2d 348 (1983). "Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court." *McKissick v. Frye*, 255 Kan. 566, 577, 876 P.2d 1371 (1994).

In *Mays*, the defendant orally offered a new uncontroverted fact at a summary judgment hearing. The court considered the evidence. On appeal, plaintiff argued that the admission of the statement violated Rule 141 and that the court improperly relied on the new uncontroverted fact. Our Supreme Court rejected plaintiff's contention, stating:

"It is difficult to find any reliance by the trial court on the complained-of statement.

"In any event, the additional factual statement did not contain any material new to the plaintiff. His counsel had taken the DiSioudi and Manning depositions which were the sources for virtually all the additional factual statement. The Dale deposition was also well known to plaintiff as his counsel had participated therein. There is no claim of inaccuracy which went undetected by virtue of the late introduction of the statement. Even assuming the district court did rely in part on the additional statement, we see no prejudice to the plaintiff. The allowance of the additional statement was within the discretion of the district court and we find no abuse of that discretion." 233 Kan. at 49.

In the present case, the trial court apparently considered the additional materials submitted in Johnson's reply brief regarding his conversation with Dr. Falliers. But it does not appear that the trial court relied on those materials in reaching its decision. The court concluded that Johnson had probable cause to refile the medical malpractice lawsuit because he held a reasonable belief that Bealer's claim was timely. The court did not address whether Johnson had factual probable cause (a reasonable belief in the medical link between Zomax and asthma).

Even if the trial court erred by considering the affidavit, such error would be harmless. " 'Harmless error is error which does not prejudice the substantial rights of a party. It affords no basis for a

reversal of a judgment and must be disregarded.' " *Tamplin v. Star Lumber & Supply Co.*, 251 Kan. 300, 308, 836 P.2d 1102 (1992) (quoting *Hagedorn v. Stormont-Vail Regional Med. Center*, 238 Kan. 691, 701, 715 P.2d 2 [1986]).

Moreover, Dr. Miskew has failed to prove that no reasonable person would agree with the trial court's decision to allow the evidence. " 'One who asserts that the court has abused its discretion bears the burden of showing such abuse of discretion.' " *State v. Davis*, 256 Kan. 1, 26, 883 P.2d 735 (1994) (quoting *State v. Heywood*, 245 Kan. 615, 621, 783 P.2d 890 [1989]). "'The defendant has a burden of showing substantial prejudice before an appellate court will find an abuse of discretion by the trial court.' " *State v. Grissom*, 251 Kan. 851, 931, 840 P.2d 1142 (1992) (quoting *State v. Stallings*, 246 Kan. 642, 646, 792 P.2d 1013 [1990]). Because Dr. Miskew has failed to show how the trial court's decision substantially prejudiced his case, his argument must fail.

Affirmed.