No. 122,446

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DONALD E. BUDD JR.,
*Appellee*,

v.

H. REED WALKER
and
REED WALKER, PA,
*Appellants.*

SYLLABUS BY THE COURT

1.

Kansas law recognizes malicious prosecution as an independent tort. Generally, malicious prosecution claims are disfavored because they tend to discourage individuals from seeking redress in the courts. To guard against such claims, the elements of malicious prosecution are to be strictly construed to keep the cause of action from being wielded by wrongdoers as a threat to ward off legitimate suits.

2.

To successfully litigate a claim of malicious prosecution the plaintiff must prove: (1) the defendant initiated, continued, or procured civil procedures against the plaintiff; (2) the defendant in so doing acted without probable cause; (3) the defendant acted with malice, that is, he or she acted primarily for a purpose other than securing the proper adjudication of the claim upon which the proceedings are based; (4) the proceeding terminated in favor of the plaintiff; and (5) the plaintiff sustained damages.

3.

An individual accused of malicious prosecution need not be a party to the underlying action; an attorney who represented a plaintiff in a prior action may also be held liable in a subsequent malicious prosecution case.

4.

In an underlying civil proceeding, the case is successfully determined in favor of a defendant in three possible ways:  (1) the favorable adjudication of the claim by a competent tribunal, (2) the withdrawal of the proceedings by the person bringing them, or (3) the dismissal of the proceedings because of that person's failure to prosecute them.

5.

In Kansas, a claim for malicious prosecution does not require a termination of the underlying action in favor of the defendant to be based, at least in part, on the merits of the action.

6.

In the malicious prosecution context, a determination of whether a dismissal in the underlying action based upon res judicata or collateral estoppel was favorable to the defendant requires an examination of the outcome of the original case upon which the ruling was based.

7.

For a malicious prosecution plaintiff to show the prior civil proceedings terminated in his or her favor, such plaintiff must establish that he or she prevailed in the litigation as a whole and not just in part.

Appeal from Wyandotte District Court; R. WAYNE LAMPSON, judge. Opinion filed May 21, 2021. Reversed and remanded with directions.

*Kate B. McKinney*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Overland Park, and *David E. Larson*, pro hac vice, of the same firm, of Kansas City, Missouri, for appellants.

*R. Pete Smith* and *William C. Odle*, of McDowell, Rice, Smith & Buchanan, P.C., of Kansas City, Missouri, for appellee.

Before ARNOLD-BURGER, C.J., POWELL and CLINE, JJ.

POWELL, J.: H. Reed Walker, a Kansas attorney, and his law practice Reed Walker, PA (together referred to herein as Walker), appeal from a jury's verdict finding him liable for malicious prosecution. In 2016, Walker represented Lisa Tanking in litigation related to an alleged common-law marriage with Donald E. Budd Jr., the appellee in this case. After that litigation concluded, Budd sued Walker and Tanking, alleging malicious prosecution for the filing of two divorce actions in Johnson County in 2016. Tanking was later dismissed from the case, and a jury awarded Budd damages of $75,394.41. The jury also approved punitive damages, which the district court then assessed at $35,000, bringing the total damages awarded to Budd at $110,394.41.

Walker now appeals, claiming the district court erred by not granting him summary judgment and by not granting him a directed verdict at the close of the evidence. Walker also argues the district court erred by refusing to allow the admission of evidence relating to Budd's and Tanking's settlement. After a careful review of the record on appeal, we conclude as a matter of law that Budd failed to establish one element of his malicious prosecution claim, namely that he prevailed on his underlying litigation against Tanking. Thus, we reverse and remand for the district court to enter judgment for Walker. Because the district court erred in failing to grant judgment as a matter of law to Walker, we also vacate the award of damages to Budd and the assessment of punitive damages against Walker.

FACTUAL AND PROCEDURAL BACKGROUND

Walker has been an attorney licensed to practice law in the State of Kansas since 1977. His practice primarily focuses on family law.

In August or September 2016, Tanking decided to end her relationship with Budd, which had lasted more than 20 years. Ending this relationship prompted Tanking to move out of the home, located in Wyandotte County, the couple had shared for approximately 15 years. The home was originally only in Budd's name but was later reconveyed to "Donald E. Budd, Jr., a single person and Lisa Marie Tanking, a single person." Tanking and Budd were listed on the home's deed as joint tenants with rights of survivorship. When Budd discovered Tanking was ending the relationship and moving out of their home, he asked her to provide him with a settlement number. This request prompted Tanking to retain Walker.

During her meetings with Walker, Tanking advised Walker that she was a coowner of the house and that she wanted to get her share of the equity out of it. Tanking told Walker there had never been a ceremonial marriage between Budd and her, but they were viewed by others as a married couple; Budd had given her a large diamond solitaire ring and a diamond eternity band, which she wore on her left hand; and the couple had hosted a 20-year anniversary party at their home. She also testified she personally believed they were in a common-law marriage. Nevertheless, she informed Walker that she and Budd were never legally married, they had no agreement to be married, and they did not hold themselves out as husband and wife to the public. Further, on Walker's new client intake form, Tanking listed the date and place of the couple's marriage as "zero."

Walker testified that based upon his experience and interpretation of the law, he concluded there was information presented by Tanking to suggest that she and Budd did hold themselves out as husband and wife, despite Tanking's interpretation of the phrase.

Walker concluded that he might be able to prove the elements of a common-law marriage based on the length of the couple's cohabitation and their public activity.

Accordingly, Walker filed a petition for divorce on September 15, 2016, on Tanking's behalf in the Johnson County District Court. The petition alleged the existence of a common-law marriage between Tanking and Budd, requested a dissolution of the common-law marriage and division of the marital assets, and asserted an alternative claim for equitable division of the assets based upon *Eaton v. Johnson*, 235 Kan. 323, 681 P.2d 606 (1984). Walker testified he believed that if the district court did not find a common-law marriage, it would then follow *Eaton* and equitably divide the jointly owned property.

Yet, when Walker filed this suit, Tanking was not a resident of Johnson County. While she was in the process of moving from the couple's home in Wyandotte County to Johnson County, she did not yet have an official residence, contrary to what the petition alleged. A few weeks after filing, Budd filed a motion to change venue because Tanking did not live in Johnson County. This motion prompted Walker, on Tanking's behalf, to dismiss the lawsuit without prejudice on September 30, 2016, and then refile a second case in the Johnson County District Court the same day, at which point Tanking was a Johnson County resident. Budd did not contest the venue thereafter.

In these filings, Walker requested the Johnson County District Court's standard domestic restraining orders, which were granted. Budd testified these restraining orders froze his assets, except for living and attorney fee expenditures, which made it hard for him to conduct business.

On October 3, 2016, shortly after the refiling of the divorce case in Johnson County, Budd filed an action in Wyandotte County seeking a declaratory judgment that no common-law marriage existed between Budd and Tanking. This petition did not seek

5

a division or allocation of any shared property. This filing prompted the district judge presiding over the Johnson County divorce case to stay the case on comity grounds as Budd's case filed in Wyandotte County could possibly be dispositive of whether Budd and Tanking were common-law married.

While the Johnson County case was pending, Budd's attorney requested several times that Walker dismiss that case. Walker refused to do so, as it was the only case in the dispute that sought division of the property at the time. Subsequently, on May 1, 2017, Budd filed a notice of intent in the Wyandotte County case to seek an equitable allocation of the property jointly owned or acquired by himself and Tanking during the time they lived together, citing *Eaton*, and requested the home be set aside entirely to him.

At some point prior to the June 2017 trial for the Wyandotte County case, Tanking told Walker that she no longer wanted to fight about the parties' marital status or the common-law marriage; she just wanted to get half of the equity from the house. But Walker believed that under *Eaton*, the existence of a common-law marriage would still have to be litigated for Tanking to receive an equitable distribution.

Budd's Wyandotte County declaratory judgment action proceeded to a bench trial in June 2017. The district court made a finding that a common-law marriage did not exist. Specifically, the district court held:

> "[T]he evidence showed that the parties never entered into a ceremonial marriage and never had a common law agreement to be husband and wife, and the second element therefore fails. Additionally the parties never held themselves out as husband and wife. To the contrary, all legal documents, including deeds and tax returns, that the parties filed over the years were filed as single individuals. Furthermore, neither party told third parties that they were married to one another."

The district court then found that Tanking had an equitable interest in the house she and Budd owned together and that she was entitled to a baby grand piano in Budd's custody as her separate property. Rather than order the property sold and proceeds allocated between Budd and Tanking, the district court ordered that the property be appraised and Tanking receive 20% of the appraised value less the amount Budd had invested in the property. The district court found that Budd's investment in the property amounted to $1,052,110.27. Subsequently, the property was appraised at a value of $885,000, which resulted in no net positive monetary interest for Tanking and no payment to her.

On July 12, 2017, the Johnson County case was dismissed due to the Wyandotte County District Court finding there had been no marriage between Tanking and Budd.

Walker appealed the Wyandotte County case on behalf of Tanking. Another panel of this court affirmed the district court's judgment. *Budd v. Tanking*, No. 118,445, 2018 WL 4262676, at *5 (Kan. App. 2018) (unpublished opinion). After this adverse decision, Walker, again on behalf of Tanking, sought review from the Kansas Supreme Court.

On July 5, 2018, while Tanking's appeal was still pending before the Supreme Court, Budd filed his present suit against Tanking and Walker, alleging malicious prosecution for the filing of the divorce actions in the Johnson County District Court. Budd alleged that the filing and continuation of the common-law marriage claim was without probable cause and with malicious intent.

In April 2019, Budd and Tanking reached a settlement agreement in the malicious prosecution case. Under that agreement, Tanking agreed to dismiss her appeal of the Wyandotte County judgment, which was still pending before the Kansas Supreme Court, and Budd agreed to dismiss Tanking from the instant case. Thereafter, Tanking directed

Walker to withdraw the petition for review, which he did, ending the appeal. Budd then dismissed Tanking as a defendant in this case.

Walker sought summary judgment against Budd's malicious prosecution claims, arguing there were no genuine issues of material fact and he was entitled to judgment as a matter of law. Specifically, Walker argued he had probable cause to bring the divorce case on behalf of Tanking and that Budd did not prevail on the merits in the Johnson County case. The district court denied Walker summary judgment via a written order. It held that the decision whether Walker's actions rose to the level of malicious prosecution should rest with the jury, stating: "As there is conflicting testimony as to the intent to be determined from the actions of [Walker], motion for summary [judgment] is not proper at this time." The district court did not address Walker's argument that the cases were not decided on the merits or entirely adverse to Tanking.

The malicious prosecution case proceeded to a jury trial. At trial, Walker testified he chose to argue there was a common-law marriage because he believed there might be evidence of a common-law marriage and raising that claim was the only way to trigger an equitable division of the couple's property under *Eaton*. However, he conceded that if someone came to his office and said, "Mr. Walker, I've been with somebody for 20 years, we're in a committed relationship, we're not married, and we have never held ourselves out . . . as husband and wife to the public," he would not be able to prove common-law marriage. The district court did not permit evidence of Tanking and Budd's settlement to be presented to the jury.

After all the evidence had been presented, Walker sought a directed verdict in his favor, reprising the arguments he made in his motion for summary judgment. The district court denied the motion on the grounds that Budd and Walker had given conflicting testimony—Budd testified the Johnson County litigation was extortion and Walker

8

"clearly explained why he did, in his opinion, what he did." The district court left weighing of the contradictory testimony to the jury.

The jury returned a verdict in favor of Budd and awarded him $75,394.41 in damages. It also found punitive damages to be appropriate, prompting the district court to assess punitive damages in the amount of $35,000, bringing the total damages awarded to Budd to $110,394.41.

After the hearing on punitive damages, Walker filed a motion for judgment as a matter of law or, in the alternative, a motion for a new trial. The district court denied this motion.

Walker timely appeals.

ANALYSIS

On appeal, Walker raises three arguments. First, he argues the district court erred in denying his motion for summary judgment. Second, Walker argues the district court erred in denying his motions for a directed verdict and for judgment as a matter of law. Third, he argues the district court erred in not admitting evidence of the settlement between Budd and Tanking. We address Walker's first and second arguments together because they require the same analysis and are dispositive.

DID THE DISTRICT COURT ERR IN DENYING
WALKER JUDGMENT AS A MATTER OF LAW?

Walker argues the district court erred in denying his motion for summary judgment because Budd could not satisfy all the elements of a malicious prosecution claim based on the uncontroverted material facts. He makes the same argument

9

concerning his motions for a directed verdict and judgment as a matter of law. First, Walker argues he had probable cause to file the Johnson County suit as a matter of law. Second, Walker argues the outcomes from both the Wyandotte County and Johnson County judgments were not favorable terminations on the merits for Budd because the Johnson County divorce case was dismissed on procedural grounds and because Tanking was awarded her equitable interest in the home, even though that equated to no payment to her.

Budd, of course, argues to the contrary, asserting that Walker knew there was no probable cause to allege a common-law marriage existed and that all the decisions in both the Wyandotte County case and the two divorce cases in Johnson County were favorable to him.

A.      *Standard of Review*

The controlling law surrounding summary judgment is well known. "[W]e review the district court's denial of a motion for summary judgment de novo, viewing the facts in the light most favorable to the party opposing summary judgment." *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015).

> "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling [is] sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of

undisputed facts is de novo." *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

Motions for a directed verdict and judgment as a matter of law are the same vehicle, just with different names. See *Siruta*, 301 Kan. at 766 (explaining motion for directed verdict now called motion for judgment as a matter of law); see also K.S.A. 2020 Supp. 60-250 (statute governing motions for judgment as a matter of law). We review a district court's denial of a motion for judgment as a matter of law de novo, "asking whether evidence existed from which a reasonable jury 'could properly find a verdict for the nonmoving party.'" *Siruta*, 301 Kan. at 766; see K.S.A. 2020 Supp. 60-250(a)(1). Similar to our review of the denial of summary judgment by a district court, our task is to "'resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought,' and, '[w]here reasonable minds could reach different conclusions based on the evidence, the motion must be denied.' [Citations omitted.]" 301 Kan. at 766.

However,

"a party may not 'appeal an order denying summary judgment after a full trial on the merits' because that 'order retains its interlocutory character as simply a step along the route to final judgment.' . . . 'Once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary judgment motion.'" *Evergreen Recycle v. Indiana Lumbermens Mut. Ins. Co.*, 51 Kan. App. 2d 459, 490, 350 P.3d 1091 (2015).

A party who has lost on summary judgment, as Walker has done here, can preserve any legal issues on appeal by including them into a trial motion for judgment as a matter of law. 51 Kan. App. 2d at 490. Thus, we consider Walker's arguments in the context of his trial motion for judgment as a matter of law.

11

B.    *The Law Surrounding Malicious Prosecution*

Kansas law recognizes malicious prosecution as an independent tort. See *McShares, Inc. v. Barry*, 266 Kan. 479, 491, 970 P.2d 1005 (1998); *Nelson v. Miller*, 227 Kan. 271, 287-88, 607 P.2d 438 (1980). Generally, malicious prosecution claims are disfavored "because they tend to discourage individuals from seeking redress in the courts." *Laing v. Shanberg*, 13 F. Supp. 2d 1186, 1189 (D. Kan. 1998) (applying Kansas law); see *Cordova v. City of Albuquerque*, 816 F.3d 645, 653-54 (10th Cir. 2016) (malicious prosecution suits "'are viewed with disfavor and are to be carefully guarded against'"). To guard against such claims, "the elements of malicious prosecution are to be strictly construed to keep the cause of action from being wielded by wrongdoers as a threat to ward off legitimate suits." *Ball v. Credit Bureau Services., Inc.*, No. 111,144, 2015 WL 4366440, at *8 (Kan. App. 2015) (unpublished opinion) (citing *Laing*, 13 F. Supp. 2d at 1188-89).

An individual accused of malicious prosecution need not be a party to the underlying action; an attorney who represented a plaintiff in a prior action may also be held liable in a subsequent malicious prosecution case. *Nelson*, 227 Kan. at 276; see *Maechtlen v. Clapp*, 121 Kan. 777, Syl. ¶ 1, 250 P. 303 (1926). To successfully litigate a claim of malicious prosecution in a civil case, the plaintiff must prove:

"(a) That the defendant initiated, continued, or procured civil procedures against the plaintiff.

"(b) That the defendant in so doing acted without probable cause.

"(c) That the defendant acted with malice, that is he acted primarily for a purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based.

"(d) That the proceeding terminated in favor of the plaintiff.

"(e) That the plaintiff sustained damages. [Citations omitted.]" *Nelson*, 227 Kan. at 276.

In *Nelson*, the Kansas Supreme Court adopted special rules applicable to claims of malicious prosecution against attorneys, as is the case here. Relying on and approving of the Second Restatement of Torts, the *Nelson* court explained:

"'[E]ven if [an attorney] has no probable cause and is convinced that his [or her] client's claim is unfounded, he [or she] is still not liable if he [or she] acts primarily for the purpose of aiding his [or her] client in obtaining a proper adjudication of his [or her] claim.'" 227 Kan. at 282-83 (quoting Restatement [Second] of Torts § 674, comment d [1976]).

### C.      *Did Budd Prevail on All Claims in the Underlying Litigation?*

Walker argues that Budd's claim must fail because Tanking was successful in the litigation on two fronts, which contradicts the tort's required showing that "the [underlying] proceeding terminated in favor of the plaintiff." First, he argues the dismissal of the Johnson County divorce case on comity grounds or res judicata does not satisfy the requirement of a favorable termination on the merits. Second, Walker argues that Budd did not prevail on all claims because Tanking was awarded her equitable interest in the property in the Wyandotte County case.

The district court did not address these arguments when it denied Walker's motion for summary judgment and denied Walker's motion for judgment as a matter of law on the grounds that the material facts were in dispute. But because we have a record of what happened in both the Wyandotte County and Johnson County cases, the material facts concerning whether Budd prevailed in the underlying action are uncontroverted; thus, the issue of whether the prior litigation was terminated in Budd's favor is a question of law

13

subject to our unlimited review. See *GFTLenexa, LLC*, 310 Kan. at 982 ("Appellate review of the legal effect of undisputed facts is de novo."); *Ball*, 2015 WL 4366440, at *2, 5 (issue of whether malicious prosecution plaintiff prevailed in underlying proceeding when pertinent facts are uncontroverted is a legal one); *Vanover v. Cook*, 69 F. Supp. 2d 1331, 1336 (D. Kan. 1999) ("'The criterion by which to determine which party was successful in the former action is the decree itself.' 52 Am. Jur. 2d, Malicious Prosecution § 43.").

In an underlying civil proceeding, the case is successfully determined in favor of the defendant in three possible ways: "(1) the favorable adjudication of the claim by a competent tribunal, or (2) the withdrawal of the proceedings by the person bringing them, or (3) the dismissal of the proceedings because of [a] failure to prosecute them." *Nelson*, 227 Kan. at 280. The last possibility did not occur here.

The second possibility is not present either. It is true that the first Johnson County divorce case filed by Walker on Tanking's behalf was voluntarily dismissed because it had been filed before Tanking had met the requirements to be a resident of Johnson County. It is also true that abandonment of a claim after voluntary dismissal may be grounds to find that a case was favorably decided for the defendant. See *Bratton v. Exchange State Bank*, 129 Kan. 82, 86, 281 P. 857 (1929). But here, the case was clearly not abandoned by Tanking as Walker refiled the same divorce action the very day the first one was voluntarily dismissed.

The crux of this case lies in whether the second Johnson County divorce case resulted in the favorable adjudication of the claim by the district court for Budd. The Johnson County District Court dismissed the pending divorce action with prejudice. Its order read:

"The Court, having heard the statements of counsel and having examined the papers and pleadings herein, and being well and duly advised in the premises, finds that the issues involved in this action have already been decided in the case of *Budd v. Tanking*, pending as Case No. 2-16-CV-000751 in the Wyandotte District Court. In that action, the Wyandotte County District Court found that no marriage existed between the parties and also divided the only property in which both parties claim an interest.

"The Court, therefore, orders that this case should be and hereby is dismissed with prejudice.

"The costs of this action are taxed against [Tanking]."

Walker argues, relying on three cases construing other state law, that this disposition was on procedural grounds and, because it was, Budd cannot satisfy the element requiring a termination of the underlying proceedings favorable to him. See, e.g., *Waste Mgmt. of Louisiana v. Parish of Jefferson*, 947 F. Supp. 2d 648, 657 (E.D. La. 2013) (applying Louisiana law, mere procedural victory not "bona fide termination in favor of a malicious prosecution plaintiff"); *Stix & Co., Inc. v. First Mo. Bank & Tr. Co., Etc.*, 564 S.W.2d 67, 70 (Mo. App. 1978) (under Missouri law, dismissal of underlying cause for lack of subject matter jurisdiction not termination in favor of party bringing malicious prosecution claim); *JSJ Limited Partnership v. Mehrban*, 205 Cal. App. 4th 1512, 1527, 141 Cal. Rptr. 3d 338 (Cal. App. 2012) (according to California law, dismissal of underlying action based upon res judicata not determination of merits for malicious prosecution purposes).

Walker's arguments rest most heavily on *JSJ* because the issue in that case was the very one presented here—namely, whether a termination of the underlying action based upon res judicata or collateral estoppel may be considered a favorable determination for the defendant. As we have indicated, the California Court of Appeals held that a determination of the underlying claim on the basis of res judicata "is not a determination

15

on the merits for purposes of a malicious prosecution action." 205 Cal. App. 4th at 1527. That court rationalized that dismissal based on res judicata was not a successful determination of the case based on the merits because "[r]es judicata . . . is a defense that does not go to the substantive merits of the claim" because it is not "a determination of the actual 'innocence' of a party." 205 Cal. App. 4th at 1525. The court elaborated:

> "Res judicata can be viewed as procedural in connection with malicious prosecution, for res judicata is not based on whether a party's claim is actually meritorious. Rather, the doctrine is an affirmative defense, which as a matter of procedure, bars the claim—just as the statute of limitations does—whether the claim is meritorious or not." 205 Cal. App. 4th at 1526.

We acknowledge the considerable caselaw which states that "[t]he doctrine of res judicata is a procedural bar to a claim." *State v. Fox*, No. 106,503, 2012 WL 4372991, at *1 (Kan. App. 2012) (unpublished opinion); see *State v. Martin*, 294 Kan. 638, 640-41, 279 P.3d 704 (2012); see also *Lonchar v. Thomas*, 517 U.S. 314, 322, 116 S. Ct. 1293, 134 L. Ed. 2d 440 (1996) (referring to doctrine of res judicata as "procedural doctrine[]"). Res judicata is a judicial doctrine used to bar a successive suit where the following requirements are met: "'(a) the same claim; (b) the same parties; (c) claims that were or could have been raised; and (d) a final judgment on the merits.'" *Cain v. Jacox*, 302 Kan. 431, 434, 354 P.3d 1196 (2015). And it appears that the Johnson County District Court's dismissal of Tanking's divorce action was based on the doctrine of res judicata or collateral estoppel. Although the district court did not explicitly say it was dismissing the case based on res judicata or collateral estoppel, an examination of the holding reveals that is the case. The Johnson County case involved the same claims—the existence of a marriage and the division of the couple's property—and the same parties—Tanking and Budd—as the Wyandotte County case. Moreover, the Wyandotte County District Court issued a final judgment on the merits.

16

The problem with Walker's argument is that Kansas' malicious prosecution law does not require a termination of the underlying action in favor of the defendant to be based, at least in part, on the merits of the action. See *Holick v. Burkhart*, 388 F. Supp. 3d 1370, 1381 (D. Kan. 2019) (Kansas Supreme Court has not required dismissal of underlying action to affirmatively show claim lacked merit); *Ball*, 2015 WL 4366440, at *7 (argument that termination of underlying action must be based in part on merits "cannot be reconciled with Kansas law on malicious prosecution"). But see *Miskew v. Hess*, 21 Kan. App. 2d 927, 941, 910 P.2d 223 (1996) (dismissal of underlying action on statute of limitations grounds not favorable termination).

In fact, our Supreme Court has indicated that the specific circumstances surrounding the dismissal of an underlying action must be examined in order to determine whether the termination was in the defendant's favor. See *Nelson*, 227 Kan. at 280; *Ball*, 2015 WL 4366440, at *6. This comports with the holding of a different California Court of Appeals panel which, disagreeing with *JSJ*, held that whether the termination of the underlying action based upon collateral estoppel or res judicata grounds qualifies as a favorable termination on the merits depends on the outcome of the original case in which the collateral estoppel or res judicata ruling was based. *Alston v. Dawe*, 52 Cal. App. 5th 706, 721-24, 267 Cal. Rptr. 3d 1 (Cal. App. 2020).

The court in *Alston* noted that while res judicata and collateral estoppel are procedural concepts more concerned with the need for finality and avoiding relitigation of issues, they are not always unrelated to the merits because they prohibit the relitigation of issues argued and decided in a previous case. 52 Cal. App. 5th at 725. This is consistent with Kansas law. See *Winkel v. Miller*, 288 Kan. 455, 468, 205 P.3d 688 (2009) (res judicata prohibits relitigation of issue between parties which might have been brought in first suit); *Hawkinson v. Bennett*, 265 Kan. 564, 589, 962 P.2d 445 (1998) (collateral estoppel may be invoked when there is prior judgment on merits concerning issue in question involving same parties); see also *Cain*, 302 Kan. at 434 (when applying

17

res judicata court must "consider the substance of both the first and subsequent action and not merely their procedural form"). For example, if the original action upon which the res judicata ruling was based litigated and decided the merits of an issue between the parties favorable to the defendant, it cannot be said that a dismissal on res judicata grounds was not a ruling favoring that party.

To adopt Walker's blanket view that dismissals on res judicata grounds can never equate to a favorable ruling on the merits for a defendant-malicious prosecution plaintiff would invite the very malicious prosecution he claims he is being wrongly accused of here. A party who loses a suit on the merits could repeatedly refile it ad nauseum, safe in the knowledge that a merits determination in such refiling would never be forthcoming because a subsequent court would dismiss the refiling on res judicata grounds. Accordingly, we hold that in the malicious prosecution context, a determination of whether a dismissal in the underlying action based upon res judicata or collateral estoppel was favorable to the defendant requires an examination of the outcome of the original case upon which the ruling was based.

When we apply that rule here, we see that while Budd may have won the battle, he loses the war because an examination of the original action fails to show a favorable determination for Budd. To recap, Walker filed a divorce action in Johnson County on behalf of Tanking claiming that Tanking and Budd had been common-law married. While this suit was pending, Budd filed his own action in Wyandotte County seeking a determination that he and Tanking had not been common-law married. The Johnson County District Court chose to defer to the Wyandotte County District Court, and, after a bench trial, the Wyandotte County District Court held Tanking had not proven the existence of a common-law marriage. However, it did grant Tanking an equitable interest in the parties' home of 20%, less Budd's contributions to the home, and awarded her the parties' piano. But given that Budd's contribution to the home exceeded the home's value, Tanking received nothing other than the piano. Tanking appealed both rulings to this

18

court, which were upheld. *Budd*, 2018 WL 4262676, at *5. Tanking then petitioned for review with the Supreme Court but dropped her petition as part of a settlement with Budd in which he agreed to drop his malicious prosecution claim against her. While the case was pending on appeal, the Johnson County District Court, relying on the result in the Wyandotte County case, dismissed Tanking's divorce case on res judicata or collateral estoppel grounds.

Budd argues that the underlying proceedings were decided in his favor because the Johnson County case was dismissed and Tanking got nothing in the Wyandotte County case. We disagree. For Budd to show he prevailed on the underlying action, he must establish that he prevailed in the litigation as a whole and not just in part. Generally speaking, this reflects the idea that the essence of a favorable termination is that it shows the innocence of the defending party. See *Vanover*, 69 F. Supp. 2d at 1336.

While it is true that Tanking lost on her principal claim asserting a common-law marriage between her and Budd, she prevailed on her secondary claim seeking an equitable division of property. Tanking's Johnson County divorce petition specifically sought, in the alternative, that she be granted an equitable division of the parties' jointly acquired property if the district court found the parties had not been common-law married. Such a claim is permitted. When a party alleges the existence of a common-law marriage which is then judicially held not to exist, the district court, "in the exercise of its inherent power to do equity, is authorized to make an equitable division of the property jointly accumulated by the parties or acquired by either with the intent that each should have an interest therein." *Eaton*, 235 Kan. 323, Syl. ¶ 2.

The district court erred in not granting judgment to Walker as a matter of law because *all* of the merits were not decided in favor of Budd. There were two issues to be determined in the Johnson County case—the existence of a marriage and the equitable division of property. While the existence of a marriage was determined in favor of Budd,

Tanking was ultimately awarded an equitable share in the couple's home. While the Wyandotte County district court's formula for calculating Tanking's payout resulted in no cash payment, Tanking was nonetheless awarded her equitable share of the property. This decision simply cannot be dismissed as a positive outcome for Budd.

Because the district court erred in not granting Walker judgment as a matter of law on the grounds that the termination of the underlying action was not in favor of Budd, we need not consider Walker's other contentions of error as they are moot. Also, given our holding that Walker was entitled to judgment in his favor as a matter of law, we also vacate the jury's verdict and award of damages in favor of Budd as well as the district court's assessment of punitive damages against Walker. We remand the case to the district court with directions that it enter judgment for Walker.

Reversed and remanded with directions.